OPINION BY McLAUGHLIN, J.:
Eric L. Green was found guilty of 99 counts of sexual abuse of children (possession of child pornography) and one count of criminal use of communication facility.[1]
*476 He was charged after the Pennsylvania State Police uncovered evidence that he had downloaded child pornography using a peer-to-peer file-sharing network known as BitTorrent. He challenges the denial of his suppression motion, the sufficiency and weight of the evidence, the ineffectiveness of counsel, the reasonableness of his sentence, and the constitutionality of applying to him the Sex Offender Registration and Notification Act, 42 Pa.C.S.A. § 9799.10 - 9799.42, ("SORNA"). We affirm.
In January 2015, the Pennsylvania State Police applied to a magisterial district judge for a search warrant for Green's residence. The affidavit of probable cause in support of the search warrant stated that the affiant, Corporal Christopher Hill, based his affidavit on information received from Corporal Gerald Goodyear. Affidavit of Probable Cause at ¶ 2. According to the affidavit, in December 2014, Corporal Goodyear identified a computer that was sharing images of child pornography on the BitTorrent file-sharing network, and had downloaded contraband digital files through BitTorrent. Id. at ¶ 20. The affidavit described one of the files as depicting a nude prepubescent girl:
Name of file: ism-024-174.jpg
Type of file: Image
Description: This image file depicts a prepubescent girl approximately 12 years old sitting on a rocky outcropping in front of an unidentified body of water. The girl has brown hair which is braided and is wearing a multicolored sheer piece of fabric and various bracelets on both wrists. She appears otherwise nude and has her legs spread so as to display her genital area which is clearly visible. In the upper left corner of the image is printed a company logo "LS Island."
Id.
The affidavit continues that the IP address that downloaded the described file was assigned to the internet service provider Comcast Cable Communications. Id. at ¶ 21. Pursuant to a court order, Comcast identified Green as the subscriber assigned to that IP address. Id. at ¶¶ 22. Comcast also provided Green's address. Id.
The affidavit described the BitTorrent file sharing process as follows. BitTorrent is a type of peer-to-peer file-sharing network that allows users to connect to each other through the internet and share digital files between users on the network. Id. at 11. To use BitTorrent, a user installs on a computer a piece of software, known as client software, that enables access to BitTorrent. Id. The person may then access a "torrent" file, which is not the actual digital content, but rather "directs users to where the contraband files do exist." Id. at ¶¶ 12, 14. A "torrent" file typically identifies at least one computer, known as a "tracker," that coordinates the users that are sharing the files described by the "torrent." Id. at ¶ 14. A user interested in obtaining child pornographic images queries a "tracker" with an appropriate search term and the tracker identifies possible matching "torrent" files. Id. at 15. The user then selects files, which the user then downloads directly from the computers sharing them. Id.
The affidavit also provided background information about police investigations involving computers and the internet. It defined various terms, such as internet protocol ("IP") addresses, file sharing, and peer-to-peer networks. Id. at ¶ 6. The affidavit then explained that "searching and seizing information from computers often requires investigators to seize all electronic storage devices (along with related peripherals) to be searched later by a qualified computer expert in a laboratory or other controlled environment." Id. at 8. The affidavit explained that such seizures, *477 subject to later searches, were necessary in order to have access to all hardware and software that may have been used to create data and thus ensure proper data retrieval. Id. Furthermore, in the corporals' experience, such computer searches and data retrieval can be complex and time-consuming. Id. at 9.
The affidavit also described Corporal Hill's and Corporal Goodyear's training and experience. Corporal Hill had taken classes on crimes involving handheld computing devices, basic cell phone investigations, cell phone "interrogations," internet investigations, basic data recovery and acquisition, and intermediate data recovery and analysis. Id. at ¶ 3. He had training specifically in investigations involving BitTorrent, and had taken the basic computer forensic examiners course and the Internet Crimes Against Children investigative techniques training program. Id. at ¶ 3. The affidavit also stated he had work experience in obtaining search warrants for electronic equipment, including cell phones, computers, personal digital assistants, and tablets. Id. Corporal Goodyear was experienced in investigations, including undercover investigations, into crimes in which suspects used computers to facilitate criminal activity. Id. at ¶ 5. He had thus become familiar with techniques and methods used to conceal criminal activity from law enforcement. Id.
The affidavit listed practices that, based on Corporal Hill's experience, were often common to individuals involved in the file sharing and downloading of child pornography. Such practices included that they "usually maintain their collections at a secure, private location for long periods of time." Id. at 23.
The court granted the warrant to search Green's home. The warrant identified the items troopers could search for and seize, including:
Any and all computer hardware, including, but not limited to, any equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical or similar computer impulses or data. Any computer processing units, internal and peripheral storage devices, (such as fixed disks, eternal hard disks, floppy disk drives, and diskettes, tape drives, tape, and optical storage devices), peripheral input/output devices (such as keyboard, printers, scanners, plotters, video display monitors, and optical readers), and related communication devices such as modems, cables, and connections, recording equipment, as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware. These items will be seized and then later searched for evidence relating to the possession and/or distribution of child pornography . This search is also to include any and all cellular phones, including, but not limited to, any cellular device that can collect, analyze, create, convert, store, conceal, transmit electronic data, and the items associated with any cellular device such as power cords, bases, sim cards, memory cards.
Search Warrant, at 1-2 (emphasis added). The magistrate district judge granted the search warrant.
Troopers executed the search warrant on Green's home and found a Samsung Galaxy Note 2 phone, which had BitTorrent client software called uTorrent installed on it. Green told the troopers that the phone was his and he was the only person that used the phone. N.T., 3/6/17, at 63. The troopers arrested Green and charged him with four counts of sexual abuse of children and two counts of criminal use of a communication facility. The prosecution later amended the charges by agreement of the parties to add 96 counts of each *478 offense, for a total of 100 counts of sexual abuse of children and 98 counts of criminal use of a communication facility.
Before trial, Green moved to suppress, arguing the warrant was overbroad and the affidavit failed to provide probable cause that the electronic device used to download the material would be found at the location searched. He also contended that it did not provide probable cause that the image was child pornography. N.T., 6/30/16, at 4; Omnibus Pre-Trial Motion, filed Apr. 14, 2016. The trial court denied the motion.
At Green's non-jury trial in March 2017, the parties stipulated that troopers had seized the phone at issue from Green's residence, that it was Green's phone, and that it contained images of pornography. N.T., 3/6/17, at 8-9. They also stipulated "that any pictures ... shown during the course of the trial that were taken during the execution of the search warrant [were] authentic." Id. at 9. The Commonwealth then proceeded with its case and presented the photographs through the testimony of Dr. Pat Bruno, who is board certified in general pediatrics and child abuse pediatrics. Id. at 12-13. The trial court found Dr. Bruno qualified to offer his opinion as to the age of the persons depicted in the photographs, and he testified that, in his opinion, the individuals depicted in the photographs were under the age of 14. Id. at 14-30. On cross-examination, Dr. Bruno agreed that the photographs depicted between six and nine different individuals, but on re-direct, he identified at least 12 different individuals. Id. at 31; 35-46. The Commonwealth then admitted the photographs into evidence. Id. at 78. Defense counsel did not object. Id.
Corporal Hill testified about the investigation and said that Green admitted to the troopers while they were executing the warrant that he was the only person that used the phone discovered at his residence. Id. at 62-63. Corporal Hill also said that Green claimed during the execution of the warrant that the images would pop-up on his screen and "he would quickly click them away to get rid of them." Id. at 63. Corporal Hill, however, testified that he has been involved with "dozens" of investigations involving BitTorrent and in his training and experience, he knew of no case where an individual has received "pop-ups" of child pornography, such as Green claimed occurred. Id. at 67, 68-69.
Corporal Hill said that the images presented at trial were contained on Green's phone. He explained that the download that Corporal Goodyear discovered during the initial investigation bore an "LS models" logo, which is a known child pornography site. Id. at 55. Corporal Hill further testified that Green's search history included a search for a Russian website from which a user can view and download images of child pornography. Id. at 70. Green's history also included searches for "14 year old blond girls" and "teen sex movies." Id. Corporal Hill testified the photographs were taken at least ten years ago, do not appear to be altered, and were from a known series of child pornography. Id. at 75-76. He stated that, judging from the dates and times of the downloaded images, the next image would appear "a couple seconds" after the previous image. Id. He could not tell how long the images remained on the screen. Id. at 74.
Green testified in his own defense and said that he did not intentionally view the photographs on the phone. Id. at 81. He repeated his claim that in the course of downloading legal pornographic movies using BitTorrent, he would get pop-ups that he would "click away from." Id. at 81. He claimed not to have used the photographs for sexual gratification or stimulation. Id. at 82.
*479 The trial court found Green guilty of 99 counts of possession of child pornography and one count of criminal use of a communication facility. Id. at 96. The court stated that it found credible Dr. Bruno's and Corporal Hill's testimony; it did not believe Green's claim that "pop ups viewed in looking for legal porn led him to the sites." Id. at 96-97. The courted determined that "the sexually provocative nature of photos as well as [Green's] admissions supports a finding that the images were possessed for purposes of stimulation or gratification." Id. at 96.
In May 2017, Green made a motion for extraordinary relief for judgment of acquittal. Order, 5/25/17. Green claimed he was entitled to a judgment of acquittal or new trial because the witnesses were unable to authenticate the photographs. Defendant's Br. in Support of Oral Motion for Extraordinary Relief, filed Jun. 29, 2017. The court denied the motion. It found the "pictures were authenticated by stipulation, ... there was no evidence to suggest that they were altered in any way." Order, 7/1/17.
On July 14, 2017, the trial court sentenced Green. For the convictions for possession of child pornography on counts one through four, the court imposed consecutive terms of 12 to 24 months' imprisonment. For the remaining counts of possession of child pornography, the court imposed concurrent terms of 12 to 24 months' imprisonment, and for the criminal use of communication facility count the court imposed a concurrent term of two to 12 months' imprisonment. This was an aggregate sentence of four to eight years' imprisonment. Green filed a post-sentence motion, which included a request that the trial court strike the requirement that he register pursuant to SORNA. The motion also challenged the weight of the evidence. The trial court denied the motion on December 29, 2017. Green filed a timely notice of appeal.
On appeal, Green raises the following issues:
1. Did the lower court err by denying [Green's] motion to suppress evidence?
2. Was the evidence submitted at trial insufficient to establish beyond a reasonable doubt that [Green] committed the offenses as alleged, in that the evidence failed to prove that the still photos depicted sexual acts prohibited by the statute, and additionally, that the nudity was depicted for sexual gratification?
3. Was the evidence submitted insufficient to prove beyond a reasonable doubt the authenticity of the photographs?
4. Was the verdict against the weight of the evidence when [Green] testified that the photos popped up; they were only displayed for a few seconds; the expert could not establish the time that the photos were accessed, nor the amount of time they were on the screen able to be viewed?
5. Was trial counsel ineffective for failure to file a Motion in Limine to challenge the admissibility of the photographs and failing to object to their admissibility at trial on grounds that the Commonwealth failed to produce the originals and/or to authenticate the photos seized from [Green's] cellphone?
6. Did the trial court abuse its discretion by imposing 4 to 8 years of incarceration when [Green] had no prior record for violent crimes, and a prior record score of "0[;]" and the consecutive sentencing and aggregate sentence [is] manifestly excessive considering [Green's] history and the characteristics and nature of the offenses?
7. Did the trial court's failure to strike SORNA requirements violate [Green's] rights to a good reputation, to due process, *480 right against double jeopardy, and the rights against Attainder, as guaranteed by both the United States and Pennsylvania Constitutions?
Green's Br. at 5-6.
I. Motion to Suppress
In his first issue, Green claims the trial court erred in denying his motion to suppress. He claims the search warrant for his residence was overbroad because it allowed the police to search all files on electronic devices found at the residence, regardless of whether the devices were used for criminal purposes and without "certainty" that the suspected devices would be present. Green's Br. at 18. He further argues that the search warrant was not supported by probable cause.
"Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." Commonwealth v. Jones , 605 Pa. 188, 988 A.2d 649, 654 (2010). "Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, 'whose duty it is to determine if the suppression court properly applied the law to the facts.' " Id. (quoting Commonwealth v. Mistler , 590 Pa. 390, 912 A.2d 1265, 1269 (2006) ).
The Pennsylvania Supreme Court has further explained that:
It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.
...
[Further,] a reviewing court [is] not to conduct a de novo review of the issuing authority's probable cause determination, but [is] simply to determine whether or not there is substantial evidence in the record supporting the decision to issue the warrant.
Id. at 655 (quoting Commonwealth v. Torres , 564 Pa. 86, 764 A.2d 532, 537-38, 540 (2001) ) (alterations in original).
A. The Search Warrant Was Not Overbroad.
Article I, Section 8 of the Pennsylvania Constitution provides, in pertinent part: "[N]o warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be. ..." Pa. Const. Art. I § 8. Thus, "a warrant must name or describe with particularity the property to be seized and the person or place to be searched." Commonwealth v. Orie , 88 A.3d 983, 1002 (Pa.Super. 2014) (quoting Commonwealth v. Rivera , 816 A.2d 282, 290 (Pa.Super. 2003) ). "The particularity requirement prohibits a warrant that is not particular enough and a warrant that is overbroad," which are separate, but related, issues. Id. (quoting Rivera , 816 A.2d at 290 ). A warrant lacks sufficient particularity if it "authorizes a search in terms so ambiguous as to allow the executing officers to pick and choose among an individual's possessions to find which items to seize." Id. (quoting Rivera , 816 A.2d at 290 ). A warrant is unconstitutionally overbroad if it "authorizes in clear or specific terms the seizure of an entire set of items, or documents, many of which will prove unrelated to the *481 crime under investigation." Id. at 1002-03 (quoting Rivera , 816 A.2d at 290 ).[2]
This Court addressed a series of search warrants for electronic devices and electronically stored information in Orie . We found several challenged warrants to be valid and not overbroad. However, we did invalidate as overbroad a search warrant for a flash drive. The warrant authorized seizure of the flash drive and "any contents contained therein, including all documents, images, recordings, spreadsheets or any other data stored in digital format." Orie , 88 A.3d at 1008. We explained that there was no limitation to account for non-criminal use of the flash drive. Id. We also found overbroad a search warrant for an email account that authorized seizure of "all stored communications and other files ... between August 1, 2009 and the present, including all documents, images, recordings, spreadsheets or any other data stored in digital format." Id. (alteration in original).
Despite the overbreadth of those warrants, however, we nonetheless denied relief. We explained that although the flash drive and email account were seized pursuant to overbroad warrants, the police did not search either the flash drive or email account until they had obtained subsequent, more detailed warrants that provided the requisite particularity. Id. at 1008. Although we stated that two warrants are "neither required nor preferred" in such circumstances, we concluded that the search passed constitutional muster. Id. at 1008 n. 42.
We confronted similar issues in Commonwealth v. Melvin , 103 A.3d 1, 17 (Pa.Super. 2014). There, police obtained a broadly worded warrant for an email account, akin to the email warrant we found to be overbroad in Orie , and the police seized the account. Although they subsequently obtained a second, particularized warrant, the particularity of the second warrant could not cure the overbreadth of the initial warrant because they had begun searching the contents of the account before they obtained the second warrant. Id. at 18-19.[3]
In sum, following Orie and Melvin , a warrant may permit the seizure of electronic equipment so long as the search of the equipment is limited to looking for evidence of the specific crimes that the police had probable cause to believe the defendant committed.
Here, the trial court denied the motion to suppress because "the search warrant sought only 'evidence relating to the possession and/or distribution of child pornography.' " Opinion and Order, filed Dec. 8, 2016, at 4 ("Suppression Op."). It thus concluded that the warrant's scope "was sufficiently narrow as to exclude evidence of non[-]criminal behavior." Id. It explained that by their nature, "[d]igitial storage systems must be seized in their entirety and then searched at a later time." Id. at 4. It also noted Corporal Hill's statements in the affidavit that police must seize all of a "computer system's input/output peripheral devices, related software, documentation and data security devices ... so that a qualified computer *482 expert can accurately retrieve the system's data in a laboratory or other controlled environment." Id. at 4. It thus concluded that, considering the warrant in that context, it was not overbroad. Id.
The denial of the motion to suppress was not error. Green was under investigation for computer-based criminal acts, i.e. , possession of child pornography on electronic equipment. The warrant contained a general description of electronic items to be seized, but permitted the seized devices to be searched only for "evidence relating to the possession and/or distribution of child pornography." Application for Search Warrant, at 1-2; see Orie , 88 A.3d at 1008. Pursuant to Orie and Melvin , the warrant was not overbroad.
Green relies on United States v. Wecht , 619 F.Supp.2d 213, 217 (W.D.Pa. 2009), to argue otherwise. That reliance is misplaced, as we of course are not bound by decisions of federal courts other than the Supreme Court. Orie , 88 A.3d at 1009 ; Commonwealth v. Lambert , 765 A.2d 306, 315 n. 4 (Pa.Super.2000). To the extent Wecht could have persuasive value, it is distinguishable. There, the court found a warrant overbroad that authorized the seizure of not only a computer, but also "all information contained therein, including data stored on any associated data storage devices such as zip drives, discs (of any kinds including cd and hard), and back-up tapes." Id. at 240. That was improper, the court explained, because it permitted seizure of "every single file or piece of information contained within-whether a personal piece of correspondence, a personal photograph, a downloaded music file, or data reflecting non-relevant internet access-without any qualifying requirement that it relate to the investigation at hand." Id. at 246.
Such is not the case here. Although the warrant permitted the initial seizure of the phone as a whole, it limited the subsequent search and seizure of information on the phone to "evidence relating to the possession and/or distribution of child pornography." The trial court properly denied the motion to suppress.
B. The Search Warrant Was Supported by Probable Cause.
Green also argues that the magisterial district judge issued the warrant in the absence of probable cause. "[S]earch warrants may only issue upon probable cause and '[t]he issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits.' " Commonwealth v. Leed , --- Pa. ----, 186 A.3d 405, 413 (2018) (quoting Pa.R.Crim.P. 203(B) ) (alteration in original). "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." Id. (quoting Commonwealth v. Johnson , 615 Pa. 354, 42 A.3d 1017, 1031 (2012) ).
1. Description of Photograph
Green maintains the magisterial district judge lacked probable cause that the photograph Corporal Goodyear had found was child pornography. He claims this is so because the judge did not personally view the photograph and the description and file name contained in the affidavit did not indicate it "would meet the legal requirements to constitute child pornography." Green's Br. at 20.
Although the magisterial district judge did not view the photograph, the affidavit of probable cause contained a sufficient description of it to provide probable cause to believe it was child pornography. The statute the troopers suspected Green of *483 violating prohibits (among other things) the "possession or control" of any "computer depiction" of "a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act. ..." 18 Pa.C.S. § 6312(d). The statute defines "prohibited sexual act" to include "lewd exhibition of the genitals or nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction." 18 Pa.C.S. § 6312(g).
The affidavit provided sufficient information to provide probable cause that the photograph met those definitions. The affidavit describes the photograph as depicting an approximately 12-year-old child wearing a sheer piece of fabric and bracelets but "otherwise nude," with "her legs spread so as to display her genital area which is clearly visible." That was sufficient to support the issuance of the warrant. See Commonwealth v. Koehler , 914 A.2d 427, 435 (Pa.Super. 2006) (finding probable cause for violation of Section 6312(d) where affidavit described photographs as being "of nude and partially nude minor females, showing genitalia, with some involving touching of breasts").
2. Location
Green next maintains the warrant was issued without probable cause that the electronic device containing child pornography was in his home. He argues that the IP address could have been utilized by portable electronic equipment, asserting that it is possible to access an "IP modem" from outside a residence.
The trial court explained that "although there would be no guarantee" that the device that downloaded the photo would be in Green's home, due to the portable nature of most computer devices, there was probable cause to believe it would, because "the device which contained the file sharing software was [Green's] phone." Suppression Op. at 6. The trial court also rejected Green's contention that the possibility that another person could have used his IP address precluded a finding of probable cause.
We conclude this was not error. The affidavit contained information that child pornography had been downloaded by a device using an IP address associated with Green's residence. This was sufficient to establish probable cause to believe a device containing child pornography was located at the residence. The police were not required to prove their suspicion beyond a reasonable doubt, or disprove arguments that Green might conceivably raise. "The question we ask is not whether the officer's belief was 'correct or more likely true than false.' " Commonwealth v. Thompson , 604 Pa. 198, 985 A.2d 928, 931 (2009) (quoting Texas v. Brown , 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) ). Rather, to obtain a warrant, police need only show the probability that evidence of criminality is in the place they seek permission to search. Id. (citing Illinois v. Gates , 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ). The affidavit here made that showing.
3. Staleness
Green also claims the warrant was stale, as the alleged criminal activity occurred on December 28, 2014 and the police did not apply for a warrant until slightly more than two weeks later, on January 14, 2015. However, Green's motion to suppress did not raise staleness. Green therefore waived this claim for appellate purposes. See Pa.R.A.P. 302(a) (providing "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").
*484 If Green had not waived the issue, we would reject it as meritless. When determining whether a warrant is supported by probable cause, the "[a]ge of the information supporting a warrant application is a factor." Leed , 186 A.3d at 413 (quoting Commonwealth v. Hoppert , 39 A.3d 358, 363 (Pa.Super. 2012) ). If the information is too old, it is "stale," "and probable cause may no longer exist." Id. (quoting Hoppert , 39 A.3d at 363 ). Staleness, however, "is not determined by age alone, as this would be inconsistent with a totality of the circumstances analysis." Id.
In Commonwealth v. Gomolekoff , 910 A.2d 710, 713-15 (Pa.Super. 2006), this Court rejected a staleness claim where police obtained a warrant nine and a half months after the defendant sent emails containing alleged child pornography. We noted that other courts had observed in other cases that "pedophiles rarely, if ever, dispose of child pornography" and that "[p]resumably individuals will protect and retain child pornography for long periods for time because it is illegal and difficult to obtain." Id. at 714 (quoting Unite d States v. Zimmerman , 277 F.3d 426, 434 (3d Cir. 2002) ). We further pointed out that the affidavit in support of the warrant application in Gomolekoff stated that the affiant was aware due to training and experience that persons who use home computers tend to retain their files and data for extended periods. Id.
Here, Green's staleness claim fails for similar reasons. Corporal Hill's affidavit of probable cause, akin to the affidavit in Gomolekoff , stated that, based on Corporal Hill's experience, individuals who possess child pornography "usually maintain their collections at a secure, private location for long periods of time." Affidavit of Probable Cause at ¶ 23. Viewing the totality of the circumstances, the information contained in the affidavit was not stale. See Gomolekoff , 910 A.2d at 713-14.
II. Sufficiency of the Evidence
Green argues the Commonwealth presented insufficient evidence to support his convictions. He claims the evidence at most showed that his viewing of the images was accidental, and he did not intentionally view or knowingly possess the images. In support, Green points to his testimony that when he used his phone to download legal adult pornographic movies, images of females under the age of 18 would "pop up," and he would immediately "click away" from them. Green's Br. at 26. He also notes Corporal Hill's testimony that he could not determine how long the images remained on the screen and that a particular image appeared a couple seconds" after the previous image. Id. (citing N.T., 3/6/17, at 73). Green also notes the images were not saved in a gallery on the cell phone that could be assessed at a later time.
Green also contends that the Commonwealth presented insufficient evidence to establish the images depicted a "prohibited sexual act." He claims this is so because there was allegedly no evidence the "nudity [was] depicted for the purpose of sexual stimulation or gratification of any person." Id. at 31.
When reviewing a sufficiency of the evidence claim, we must determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crime charged is established beyond a reasonable doubt. See Commonwealth v. Dale , 836 A.2d 150, 152 (Pa.Super. 2003). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial *485 evidence." Commonwealth v. Brown , 23 A.3d 544, 559 (Pa.Super. 2011) (en banc ) (quoting Commonwealth v. Hutchinson , 947 A.2d 800, 805-06 (Pa.Super. 2008) ).
To establish possession of computerized child pornography, the Commonwealth must prove that the defendant "intentionally view[ed] or knowingly possesse[d] or control[led] any ... computer depiction ... depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act...." 18 Pa.C.S.A. § 6312(d). "Prohibited sexual act" is defined as "[s]exual intercourse as defined in section 3101 (relating to definitions), masturbation, sadism, masochism, bestiality, fellatio, cunnilingus, lewd exhibition of the genitals or nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction." 18 Pa.C.S.A. § 6312(g) ; Commonwealth v. Davidson , 595 Pa. 1, 938 A.2d 198, 213 (2007).
Green's challenge to the mens rea element fails. In reaching its verdict, the trial court found the testimony of Dr. Bruno and Corporal Hill to be credible and rejected Green's testimony as not credible. Corporal Hill's testimony supports a finding that Green intentionally viewed and knowingly possessed or controlled the depictions of child pornography. Corporal Hill testified that he had never encountered "pop up" child pornography such as Green claimed, and that the "LS" logo on some photographs was from a known child pornography site. He also said that Green's search history included a search for a website from which people could view and download images of child pornography. His testimony, coupled with the large number of photographs found on Green's phone, permitted the fact-finder to conclude that Green did not encounter the images as accidental "pop ups," but rather that he intentionally viewed them.
Green's challenge to the sufficiency of the evidence to prove that the photographs depicted a "prohibited sexual act" fares no better. Dr. Bruno noted in his testimony that the photographs depicted the individuals' genitalia and pubic areas. That was sufficient to support the conclusion that the images were possessed for purposes of gratification. See Davidson , 938 A.2d at 213 (concluding "an individual of ordinary intelligence ... can identify whether a photograph of a nude child depicts 'nudity' for the purpose of sexual stimulation or gratification").
III. The Best Evidence Rule and Authenticating the Photographs
We will address Green's third and fifth issues together, as they are related. In his third issue, Green maintains that the Commonwealth failed to present sufficient evidence because the photographs were not originals and the Commonwealth's expert could not testify with certainty that they were not altered, modified, or changed. In his fifth issue, Green argues his trial counsel was ineffective for failing to file a motion in limine to preclude photographs because the Commonwealth failed to admit the originals or to authenticate the photographs admitted. He claims he can raise this trial counsel ineffectiveness claim on this direct appeal because it is clear from the record counsel was ineffective.
A. Sufficiency of the Evidence
Green's argument is unclear, but he appears to contend that the Commonwealth presented insufficient evidence because it did not introduce into evidence the "original" photographs it charged constituted child pornography, that is, the photographs from the photographer. In support, he cites the best evidence rule.
*486 This argument is confused and lacks foundation in the law. The best evidence rule is a rule of evidence, and even if evidence were admitted in violation of the best evidence rule, that would not impact the sufficiency of the evidence. Rather, when reviewing the sufficiency of the evidence, we consider "all evidence actually received." Commonwealth v. Fitzpatrick , 159 A.3d 562, 567 (Pa.Super. 2017) (quoting Commonwealth v. Hutchinson , 947 A.2d 800, 805-06 (Pa.Super. 2008) ). Any claim that improper admission of evidence undermines the legal sufficiency of the evidence to support guilt is thus meritless.
We also reject the challenge to the authentication of the photographs because Green stipulated to their authenticity at trial. As the trial court points out, even without such stipulation, the expert testimony was sufficient to establish the photographs were what they purported to be. The evidence, which included the photographs, a stipulation to the authenticity of the photographs, and expert testimony explaining such photographs, was sufficient to support a finding that the photographs constituted child pornography.
To the extent he argues the trial court admitted the photographs in violation of the best evidence rule, he waived this claim by not raising the objection before the trial court. Pa.R.A.P. 302(a) (stating "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").
Even if he had not waived this claim, we could conclude the Commonwealth met the requirements of the best evidence rule. Any claim that the image is not the "original" photograph taken by the photographer is irrelevant, because the Commonwealth was not trying to prove Green possessed those "original" photographs. Green was charged with possessing certain images stored in digital form, and the Commonwealth introduced those images into evidence at trial. Its introduction of those images satisfied the best evidence rule. See Pa.R.E. 1002 (providing "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise"); Pa.R.E. 1003 (providing "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate").
B. Trial Counsel Ineffectiveness
Apparently realizing he waived his best evidence argument, Green claims his counsel was ineffective for failing to object to the admission of the photographs based on the best evidence rule and a failure to authenticate the photographs. He claims that he should be permitted to raise this ineffectiveness claim on direct appeal because the ineffectiveness is apparent from the record and it is a meritorious claim.
We disagree. Generally, a claim that trial counsel is ineffective is deferred to collateral review under the Post Conviction Relief Act. Commonwealth v. Holmes , 621 Pa. 595, 79 A.3d 562, 563-64 (2013). This general rule has exceptions that allow for review of an ineffectiveness claim on direct review: (1) the ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice; (2) the defendant has shown good cause and knowingly and expressly waives his entitlement to seek subsequent PCRA review from the conviction and sentence; and (3) the defendant is statutorily precluded from obtaining PCRA relief, such as where the court sentenced the defendant to paying a fine only. Id. ;
*487 Com monwealth v. Delgros , --- Pa. ----, 183 A.3d 352, 361 (2018). Although the trial court retains discretion to address ineffectiveness claims on post-sentence motions, "the presumption weighs heavily in favor of deferring such claims to collateral review." Commonwealth v. Knox , 165 A.3d 925, 928 (Pa.Super. 2017).
Here, the trial court declined to exercise its discretion to review the ineffectiveness claim. This was not an abuse of discretion. The claim does not meet any of the exceptions to the rule requiring deferral. Green does not attempt to invoke the second and third exceptions listed above, and his invocation of the first exception fails. As we explained above, the record refutes Green's best evidence rule argument. We therefore cannot say that "the ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice." See Holmes , 79 A.3d at 563-64.
IV. Verdict Was Not Against the Weight of the Evidence
Green next maintains the verdict was against the weight of the evidence because he testified that the images were pop-ups that appeared on his screen and Corporal Hill's testimony supported this, as he testified the images were only on the phone for seconds and were not saved.
An appellate court reviews the denial of a motion for a new trial based on a claim that the verdict is against the weight of the evidence for an abuse of discretion. Commonwealth v. Clay , 619 Pa. 423, 64 A.3d 1049, 1054-55 (2013). "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." Id. at 1055 (quoting Commonwealth v. Widmer , 560 Pa. 308, 744 A.2d 745, 753 (2000) ).
A trial court should not grant a new trial "because of a mere conflict in the testimony." Id. Rather, to grant a new trial, the trial court must "determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." Id. (quoting Widmer , 744 A.2d at 752 ). Stated differently, a trial court should not award a new trial unless the verdict "is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." Id. (quoting Widmer , 744 A.2d at 752 ).
Here the trial court found the "verdict comported with the evidence and the Court's sense of justice in light of what the statute provides." Opinion at 7. The court noted it did not credit Green's testimony that the pictures were mere pop-ups. Further, it noted Corporal Hill stated that, in his experience, he had not seen the type of spam reported by Green and that Green's search history included a website from which to view and download images of child pornography. We conclude that the trial court did not abuse its discretion in finding the verdict was not against the weight of the evidence. The trial court, as fact-finder, was entitled to make credibility determinations, and its verdict does not shock the conscience.
V. Discretionary Aspects of Sentence
Green claims the trial court abused its discretion by imposing an unreasonable and manifestly excessive sentence because he had a prior record score of zero and he was found to not be a *488 sexually violent predator. He argues that he did not take the photographs and he viewed the photographs for "mere seconds." Green's Br. at 46. He argues the court failed to consider his history and the nature and character of the offense. Id. at 11.
A challenge to the discretionary aspects of a sentence is not appealable as of right. Commonwealth v. Colon , 102 A.3d 1033, 1042 (Pa.Super. 2014) ; Commonwealth v. Cartrette , 83 A.3d 1030, 1042 (Pa.Super. 2013) (en banc ). Before we exercise jurisdiction to reach the merits of a claim, we must determine whether: (1) the appeal is timely; (2) the appellant has preserved his issue; (3) his brief includes a concise statement of the reasons relied upon for allowance of an appeal with respect to the discretionary aspects of his sentence; and (4) the concise statement raises a substantial question whether the sentence is inappropriate under the Sentencing Code. Colon , 102 A.3d at 1042-43 ; see also Pa.R.A.P. 2119(f) (mandating that an appellant "set forth in a separate section ... the reasons relied upon for allowance of appeal"). Only if the appeal satisfies each of these four requirements may we proceed to decide the substantive merits of the claim. Colon , 102 A.3d at 1043. When reviewing the merits of a discretionary aspects of sentence claim, we review the sentence imposed for an abuse of discretion. Id.
Green timely filed a notice of appeal; he properly preserved his issue in a post-sentence motion; and his brief contains a concise statement of the reasons on which he relies. Further, Green's claim that the sentence was unreasonable in light of the crimes and his prior history raises a substantial question. See Commonwealth v. Williams , 69 A.3d 735, 740 (Pa.Super. 2013) (finding claim "court imposed a sentence unreasonably disproportionate to her crimes and unduly excessive" raised substantial question). We will therefore review Green's claim to determine whether the trial court abused its discretion in imposing the four to eight year term of imprisonment.
The trial court noted that the sentence was within the guidelines range and less than half of the sentence requested by the Commonwealth. 1925(a) Op. at 7-8. It ran the sentence for 96 counts concurrent to each other, and ordered the sentence on only four counts to run consecutive. Id. at 8. It noted that it considered the pre-sentence investigation report, the protection of the public, the gravity of the offense in relation to impact on the victim and community, rehabilitative needs of the defendant, the sentencing guidelines, the nature of the offense, and the public interest. Id. It noted that there were six to nine children depicted in the almost 100 images found on Green's phone, and that the images were over ten years old, "with the potential to re-injure each victim indefinitely." Id. at 8-9. The court further noted that Green's search history showed searching "into the market that drives the exploitation of children" and the nature of his conduct and his "lack of remorse called for a sentence within the standard range." Id. at 9.
We conclude that the trial court did not abuse its discretion when it sentenced Green. The court considered the factors set forth in the Sentencing Code, and all other relevant information and it did not impose an excessive or unreasonable sentence.
VI. Request to Strike SORNA's Requirements
Green maintains the trial court erred when it did not strike the requirement that he register pursuant to SORNA. He alleges SORNA's registration provisions *489 have been found to be punitive and the imposition of its registration requirements on Green violates his constitutional rights to a good reputation, due process, double jeopardy, and attainder.
In Commonwealth v. Muniz , 640 Pa. 699, 164 A.3d 1189, 1193 (2017), the Pennsylvania Supreme Court found that SORNA's registration provisions constitute punishment and, therefore, the imposition of those requirements on those convicted of crimes committed prior to SORNA's enactment violated the ex post facto clause.
Green committed the crimes for which he was sentenced after the enactment of SORNA. However, he maintains that because Muniz found the registration requirements were punitive, imposition of such requirements as part of his sentence violates numerous constitutional rights. Green fails to develop any reasoned argument for supporting the claimed constitutional violations and, therefore, waived the claims.[4] See Commonwealth v. Woodard , 634 Pa. 162, 129 A.3d 480, 502 (2015) (holding "where an appellate brief fails to ... develop an issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate appellant's arguments for him."); Commonwealth v. Walter , 600 Pa. 392, 966 A.2d 560, 566 (2009) (concluding that where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived).
Judgment of sentence affirmed.

18 Pa.C.S.A. § 6312(d) and 18 Pa.C.S.A. § 7512, respectively.

Pennsylvania's requirement that the warrant describe the items to be seized "as nearly as may be" is "more stringent" than the Fourth Amendment's requirement of particularity in the description, Orie , 88 A.3d at 1003, and it requires that the warrant "describe the items as specifically as is reasonably possible." Id. (quoting Rivera , 816 A.2d at 290 ).

We ultimately denied relief notwithstanding the flaw in the search procedure because we concluded that the error was harmless. Melvin , 103 A.3d at 20.

In addition to Muniz , Green cites three cases in support of his claimed constitutional violations. The cases, however, are inapposite and Green fails to explain why the cases would require us to rule in his favor. In Commonwealth v. Williams , the Pennsylvania Supreme Court found that the registration, notification, and counseling requirements contained in a prior version of Megan's Law, the precursor to SORNA, did not constitute punishment. 574 Pa. 487, 832 A.2d 962, 964, 984 (2003). Green also cites two cases from the United States Court of Appeals for the Third Circuit, which found that the registration requirements in New Jersey's version of Megan's Law were non-punitive. Artway v. Attorney General of New Jersey , 81 F.3d 1235 (3d Cir. 1996) ; E.B. v. Verniero , 119 F.3d 1077 (3d Cir. 1997). Green then summarily concludes "[h]ad the Court determined that the New Jersey Act did inflict 'punishment,' it likely would have held that these constitutional provisions would have applied." Green's Br. at 48-49.