J-S44018-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HERMAN EDMONDSON | : | |
| | : | |
| Appellant | : | No. 18 WDA 2019 |

Appeal from the Judgment of Sentence Entered December 10, 2018
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000038-2018

BEFORE:   SHOGAN, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:               FILED NOVEMBER 22, 2019

Appellant Herman Edmondson appeals from the judgment of sentence entered following his jury trial convictions for four counts of conspiracy to commit aggravated assault.[1] He challenges the trial court's admission of certain video evidence as well as the sufficiency and weight of the evidence. We affirm.

The facts and procedural history of this case, as gleaned from the trial court's opinion and the certified record, are as follows. On October 28, 2017, Lawrence Johnson shot two victims, Martez Hunter and Arthur Smart, outside the Ultraview Lounge ("Ultraview") in Erie, Pennsylvania. The victims sustained serious bodily injury as a result of the shooting. Johnson ultimately entered a negotiated plea of no contest to aggravated assault while Appellant

_____

[1] 18 Pa.C.S.A. §§ 903 and 2702(a)(1) & (4).

proceeded to a jury trial on the charge of conspiracy to commit aggravated assault.

At trial, the Commonwealth presented the testimony of several witnesses, as well as video surveillance evidence ("Video"), depicting several angles inside and directly outside of the Ultraview on the night in question. To authenticate the Video, the Commonwealth presented the testimony of Valinton Foster, a part-owner of the building where the Ultraview was located. Foster testified that he was aware of a video surveillance system, which captured footage from both inside and outside the bar, and he was familiar with the images taken from those cameras. N.T. 10/15/18 a.m. at 57-66. He also explained that the computer system used to maintain the surveillance materials was located on the first floor of the building. Id.

The Commonwealth also provided the testimony of Rotesha Silveus, an eyewitness to the events of October 28. Silveus admitted to driving Johnson to the Ultraview that night, although she claimed that she did not know him prior. Id. at 28; 34. Silveus also testified that the Video accurately depicted those present outside the Ultraview at the relevant time and the events that took place on that night. Id. at 31-33; 40-44. Appellant also testified regarding the Video by narrating the footage, scene-by-scene, and explaining what he personally observed from his vantage point. N.T. 10/15/18 p.m. 39-61; 67-69. He also explained his familiarity with the surveillance system, due to his former employment as security for the Ultraview. Id. at 59-61.

After the trial court admitted the Video over Appellant's objections, the Commonwealth showed it to the jury. The Video showed Appellant, at the Ultraview on the night in question, escorting Johnson into the bar at approximately 2:48 a.m. through the back entrance, which did not have a metal detector. In his testimony, Appellant admitted that, ordinarily, individuals would not be permitted to enter the bar at that time of night. Id. at 45-46. The Video from inside the Ultraview depicts Johnson and Appellant talking closely with each other, after they entered the establishment. At approximately 2:54 a.m., the pair left the bar area but returned shortly thereafter. The victims left the Ultraview at approximately 3:00 a.m., and Appellant and Johnson followed closely behind. Once outside Appellant and Johnson spoke briefly and shook hands by Silveus's car. Very shortly thereafter, the Video shows Johnson running behind the victims and shooting them. While the rest of the bystanders seem to flee in other directions, Appellant appears to wait for Johnson and then flees the scene with him in the same direction.

Appellant testified in his own defense. Although he denied being involved with the shooting, Appellant admitted lying to police by claiming that he did not know Johnson before the night in question. Id. at 62. Further, Appellant admitted that he and Johnson had contact with each other, via phone and text, hours after the shooting. Id. at 72-73. Detective Bogart confirmed this contact, stating that telephone records established that

Johnson and Appellant had been in contact 141 times during that time period. Id. at 26.

After a jury convicted Appellant of the above-referenced charges, the trial court sentenced him to an aggregate sentence of 84 to 168 months' incarceration on December 10, 2018. Appellant filed a timely post-sentence motion, challenging, inter alia, the weight of the evidence. On December 14, 2018, the trial court issued an order granting Appellant credit for time served but denying his post-sentence motion in all other respects. Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a responsive Pa.R.A.P. 1925(a) opinion.

Appellant presents the following issues on appeal:

1. Whether the trial court erred in allowing into evidence video footage of the events that occurred at the Ultraview Lounge on October 28, 2017, when said footage was not authenticated by a witness who could testify to the accuracy of the portrayal.

2. Whether the evidence was sufficient to support a finding of guilt for four counts of conspiracy to commit aggravated assault where the only evidence the Commonwealth introduced to support the allegations was the improperly-admitted video footage of [Appellant] conversing with the shooter prior to the shooting, and footage of him fleeing the scene in the same general direction of the shooter after shots were fired.

3. Whether [Appellant's] conviction of four counts of conspiracy to commit aggravated assault was against the weight of the evidence where the only evidence the Commonwealth introduced to support the allegations was the improperly-admitted video footage of [Appellant] conversing with the shooter prior to the shooting, and footage of him fleeing the scene in the same general direction of the shooter after the shots were fired.

Appellant's Br. at 6.

In his first issue, Appellant argues that the trial court erred by admitting the Video in this case. Specifically, Appellant contends that the Commonwealth failed to present authenticating evidence to establish that the Video portrayed events accurately. To this end, Appellant maintains that witness Foster, while testifying about the surveillance system in place at the Ultraview, was unable to confirm that the Video accurately depicted the events on the night in question nor was he able to establish how the video was prepared or handled after it was obtained by police. Thus, Appellant asserts that the trial court erred by admitting the Video on the basis of Foster's testimony. We disagree.

"A trial court has broad discretion to determine whether evidence is admissible and a trial court's ruling on an evidentiary issue will be reversed only if the court abused its discretion." Commonwealth v. Huggins, 68 A.3d 962, 966 (Pa.Super. 2013) (citing Commonwealth v. Cook, 676 A.2d 639, 647 (Pa. 1996)). We do not disturb a ruling admitting evidence "unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." Id. (quoting Commonwealth v. Minich, 4 A.3d 1063, 1068 (Pa.Super. 2010)). As our scope of review over an evidentiary question is plenary, we may review the ruling within the context of the entire record. Id.

Authentication is required prior to the admission of evidence. The proponent of the evidence must introduce sufficient evidence that the matter

is what it purports to be. See Pa.R.E. 901(a). "Testimony of a witness with personal knowledge that a matter is what it is claimed to be can be sufficient." Commonwealth v. Mangel, 181 A.3d 1154, 1159 (Pa.Super. 2018).

Demonstrative evidence, like the Video here at issue, "is tendered for the purpose of rendering other evidence more comprehensible to the trier of fact." Commonwealth v. McKellick, 24 A.3d 982, 986 (Pa.Super. 2011) (citation omitted). To authenticate video evidence, "[i]t is not necessary that the maker of the videotape testify to the tape's accuracy; any witness familiar with the subject matter can testify that the tape was an accurate and fair depiction of the events sought to be shown." Commonwealth v. Impellizzeri, 661 A.2d 422, 428 (Pa.Super. 1995) (citations omitted).

In this case, Appellant contends that the trial court erred by relying on Foster, who did not testify that the Video accurately represented the events on the night in question, to authenticate the Video. However, the trial court did not rely upon Foster's testimony alone. See Tr. Ct. 1925(a) Opinion, 2/14/19, at 4-5. In fact, the court considered the testimony of eyewitness Silveus, who could confirm that the Video accurately depicted those present at the Ultraview at the relevant time, as well as the events of the shooting and the aftermath. Further, Appellant also testified regarding the Video, narrating the video screen by screen. Further, in his testimony, Appellant admitted to his familiarity with the surveillance system, due to his previous employment at the Ultraview. Thus, we hold that the trial court had ample evidence upon which to conclude that the Video was a fair and accurate

depiction of the events portrayed. See Mangel, 181 A.3d at 1158-59; Impellizzeri, 661 A.2d at 428. Therefore, the trial court did not abuse its discretion by finding that the Commonwealth properly authenticated the Video. See Huggins, 68 A.3d at 966; Pa.R.E. 901(a).

Turning to Appellant's second issue, he argues that the evidence was insufficient to support his conviction for conspiracy to commit aggravated assault. Appellant does not argue that Johnson did not commit aggravated assault by shooting the victims but instead maintains that the evidence was insufficient to prove that he and Johnson entered into a conspiracy to commit aggravated assault. To this end, he avers that the Video does not establish that he knew about Johnson's intention to shoot the victims, let alone that he assisted Johnson in committing the crime. Appellant points out that the Video did not have audio, so no incriminating conversations between himself and Johnson could be heard. Further, he contends that the Video merely depicts him conversing with Johnson and running away from the crime scene in the same direction as Johnson. Appellant also emphasizes that the Commonwealth did not present any testimony that could establish that conversations took place between Johnson and himself regarding plans for a shooting.

Appellant likens his case to that presented in Commonwealth v. Swerdlow, 636 A.2d 1173 (Pa.Super. 1994). In that case, our Court concluded that the evidence was insufficient to support the appellant's conspiracy to commit burglary conviction. The trial court found that the

evidence the Commonwealth presented, in that case, failed to establish any connection between the perpetrator of the burglary and the appellant except for the appellant's presence in his own home, a location the perpetrator used at some point as a staging area for the burglary. Id. at 1178. Our Court emphasized that mere presence at part of the scene of the crime is not enough to sustain a conspiracy conviction absent additional evidence to establish a connection with the perpetrator of the underlying offense. Id. In this case, Appellant contends that he was also merely present at the scene of the shooting and the Commonwealth failed to provide any evidence of a conspiracy agreement between himself and the shooter. Thus, Appellant asserts that the evidence was likewise insufficient to support his conspiracy convictions. We do not agree.

Upon a challenge to the sufficiency of the evidence, "we must determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crime charged is established beyond a reasonable doubt." Commonwealth v. Green, 204 A.3d 469, 484 (Pa.Super. 2019). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." Id. at 484-85 (citation omitted).

Under Pennsylvania law, "[a] person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he . . . agrees to aid such other person in the

- 8 -

planning or commission of such crime[.]" 18 Pa.C.S.A. § 903(a)(2). A conspiracy agreement may be established via circumstantial evidence. Commonwealth v. Devine, 26 A.3d 1139, 1147 (Pa.Super. 2011). "The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." Id. (citation omitted). The conspiracy agreement itself "can be inferred from a variety of circumstances, including, but not limited to, the relation between parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." Commonwealth v. Perez, 931 A.2d 703, 708 (Pa.Super. 2007) (citation omitted).

Here, the trial court concluded that the circumstantial evidence presented was sufficient to support Appellant's conspiracy convictions. The court noted that the Video established that Appellant escorted Johnson into the Ultraview through a back entrance, which Appellant knew was not equipped with a metal detector. Thereafter, the Video showed Appellant and Johnson conversing with each other and remaining in physical proximity to each other. Once the victims left the bar at approximately 3:00 am, Appellant and Johnson followed close behind. The video also depicts the pair engaging in a handshake outside the Ultraview, seconds before the shooting. Thereafter, Appellant is seen waiting for Johnson before running away from the scene with the shooter. Further, the trial court emphasized that the Commonwealth established that Appellant and Johnson were in repeated

contact with each other shortly after the shooting, via voluminous telephone calls and text messages.

Viewing the evidence presented in favor of the Commonwealth as the verdict-winner, as we must, we agree with the trial court's determination that ample evidence supported Appellant's convictions. See Green, 204 A.3d at 484. As the trial court noted, a web of circumstantial evidence, via the Video and the telephone records, proved that Appellant was not only present at the crime scene but confirmed a close connection between Appellant and Johnson sufficient to establish a conspiracy agreement between the two. See Devine, 26 A.3d at 1147; Perez, 931 A.2d at 708. Thus, contrary to Appellant's contention, the instant case differs from Swerdlow in that the evidence showed that Appellant was more than merely present at the crime scene. Therefore, we conclude that the evidence was sufficient to support Appellant's conspiracy to commit aggravated assault convictions.

In his last issue on appeal, Appellant contends that his convictions for conspiracy to commit aggravated assault were against the weight of the evidence. He argues that the Video does not depict him behaving in an "out of the ordinary way" during the night in question. Appellant's Br. at 24. He asserts that the Video only shows him conversing with Johnson and running in the same direction as the shooter, after the shooting took place. Thus, Appellant maintains that his convictions denied him "fundamental justice" because the convictions were contrary to the weight of the evidence. Id. at 25. We find Appellant's weight claim to be devoid of merit.

When reviewing a weight claim, we begin by noting that the jury is free to believe all, some, or none of the evidence. Commonwealth v. Roane, 204 A.3d 998, 1001 (Pa.Super. 2019). Further, "[a] trial court may only grant a new trial on a weight claim 'when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.'" Commonwealth v. Hall, 199 A.3d 954, 962 (Pa.Super. 2018) (citation omitted). We give great deference to the trial court's ruling on a weight claim, as the court observed the evidence presented at trial, and will only reverse if the trial court has abused its discretion. Roane, 204 A.3d at 1001; Hall, 199 A.3d at 962.

In the instant case, the trial court found that Appellant's contention that his convictions were contrary to the weight of the evidence lacked merit and its determination in this regard was not an abuse of discretion. See Tr. Ct. Op. at 10. As outlined above, a web of circumstantial evidence linked Appellant to Johnson and a conspiracy to shoot the victims. The Video shows Appellant in close contact with Johnson at the scene of the crime and the subsequent contact between Appellant and the shooter was established by the voluminous amount of telephone calls and text messages between the pair shortly after the shooting. Accordingly, we conclude that the trial court did not abuse its discretion by determining that Appellant's conspiracy convictions did not shock one's sense of justice and thus were not contrary to the weight of the evidence. See Roane, 204 A.3d at 1001; Hall, 199 A.3d at 962.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  11/22/2019