J-A04020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BRITTANY EMERICK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSHUA MICHAEL YESPY | : | |
| | : | |
| Appellant | : | No. 1533 MDA 2022 |

Appeal from the Order Entered September 29, 2022
In the Court of Common Pleas of Berks County Civil Division at No(s):
22 11049

BEFORE:  STABILE, J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY DUBOW, J.:                **FILED: FEBRUARY 23, 2023**

Appellant, Joshua Michael Yespy ("Father"), appeals from the final Protection from Abuse ("PFA") order entered on September 29, 2022, barring him from contact with Appellee, Brittany Emerick ("Mother") and their six-year-old daughter ("Child") for a period of three years. Father challenges the court's credibility determinations and the sufficiency of the evidence supporting the PFA order. After careful review, we affirm.

On July 7, 2022, the trial court issued a temporary PFA order barring Father from having any contact with Mother. The court held a PFA hearing on July 21, 2022, at which Father did not appear. The court entered a final PFA order on July 22, 2022.

On August 24, 2022, the court entered an order granting Father's request for reconsideration of the final PFA order. The court held a hearing on September 28, 2022, at which Father and Mother both testified, and Mother

played for the court an audio recording of Father talking on the phone to Child. Father did not object to the trial court's summarizing the contents of the phone call or the substance of the summary.

At the conclusion of the hearing, the court again entered a final PFA order barring Father from having any contact with Mother or Child for three years.[1] Father timely filed a Notice of Appeal and both he and the trial court complied with Pa.R.A.P. 1925.

Father raises five issues on appeal, three of which were not included in his Pa.R.A.P. 1925(b) Statement and, as a result, are waived. Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement . . . are waived."). Father preserved and raised the following issues for our review:

> [1.] Did the trial court abuse its discretion in finding that [Father's] testimony was not credible[?]
>
> [2.] Did the trial court abuse [its] discretion in [] its decision to prohibit contact between [Child] and [Father] for three [] years [based] entirely or primarily on a recording not in evidence?

Father's Br. at 7 (reordered for ease of analysis).

We review PFA orders under a well-settled standard of review. "In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." *C.H.L. v. W.D.L.*, 214 A.3d 1272, 1276 (Pa. Super. 2019) (citation omitted).

Father first challenges the trial court's determination that his testimony was not credible. Father's Br. at 17-19. The court explained that it found that

---

[1] The court entered a written final PFA order the following day.

Mother testified credibly, while Father's testimony was not credible. Trial Ct. Or., 11/9/22, at 7. The court "considered the demeanor of the witnesses," explaining that Mother "appeared to be a very frightened, small woman" who "did her level best to articulate [that] she was genuinely afraid of [Father]." *Id.* at 13. By contrast, Father's "testimony focused on [Mother's] shortcomings as a parent without rebutting her fear of him." *Id.* at 14.

"Assessing the credibility of witnesses and the weight to be accorded to their testimony is within the exclusive province of the trial court as the fact finder." *S.G. v. R.G.*, 233 A.3d 903, 907 (Pa. Super. 2020) (citation omitted). "In reviewing the validity of a PFA order, this Court must . . . defer to the [PFA] court's determination of the credibility of witnesses at the hearing." *C.H.L.*, 214 A.3d at 1276-77. "[T]his Court has no authority to overturn the trial court's credibility determinations" in PFA matters. *Karch v. Karch*, 885 A.2d 535, 537 (Pa. Super. 2005). Because we defer to the trial court's credibility determination, this issue fails.

In his second issue, Father assails the sufficiency of the evidence supporting the court's PFA order. Father's Br. at 13-17. We review the evidence in the light most favorable to the PFA petitioner and, granting her the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. *K.B. v. Tinsley*, 208 A.3d 123, 128 (Pa. Super. 2019).

"[T]he [PFA] Act does not seek to determine criminal culpability. A petitioner is not required to establish [that] abuse occurred beyond a

- 3 -

reasonable doubt, but only to establish it by a preponderance of the evidence." **Snyder v. Snyder**, 629 A.2d 977, 982 (Pa. Super. 1993). A "preponderance of evidence standard is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence." **Raker v. Raker**, 847 A.2d 720, 724 (Pa. Super. 2004).

The PFA Act defines "abuse," in relevant part, as follows:

> **"Abuse."** The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> * * *
>
> (5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury.

23 Pa.C.S. § 6102(a).

In the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of bodily injury. **See Raker**, 847 A.2d at 724-25. Since the PFA act's goal is to prevent abuse, a victim does not have to wait for abuse to occur for the act to apply. **Buchhalter v. Buchhalter**, 959 A.2d 1260, 1262-63 (Pa. Super. 2008). Past conduct is relevant to this consideration. **Id.** at 1263.

In determining that the evidence was sufficient to support the issuance of a PFA order, the court emphasized that it found Mother's testimony credible and Father's not credible. Trial Ct. Op. at 7. Regarding physical abuse, Mother

testified that in 2017, Father "struck her son."[2] *Id.* at 3. Also in 2017, Father shoved Mother while Mother was holding Child. *Id.* In mid-2022, Father threatened to "hit [Child] so hard that she would remember" over an incident involving a lollipop. *Id.*

In addition, Mother testified that Father speaks to Child in an aggressive manner and tells her derogatory things about Mother. In support, Mother presented the court with an audio recording of a May 2022 phone call between Father and Child. The court and the parties listened to the recording off the record. After listening, the court summarized its contents on the record as follows:

> I want the record to reflect that we spent approximately 15 to 20 minutes listening to a telephone call. It appears that the telephone call occurred on May 22nd, 2022. There was a small child on the telephone call[, later confirmed to be Child]. There appeared to be an adult voice, male voice talking to the child[, later confirmed to be Father]. For the vast majority of the phone call during the course of the phone call, the male voice referred to the child's mother[, Mother,] as being a deadbeat, accused the child of lying to the male voice, told the child that if she continued to lie – to lie, she was going to be sorry, told her that that would be a wrap for the summer. The male voice told the child that her mother was homeless, that her mother had a quote idiot boyfriend, that her mother had a quote fake boyfriend. The male voice said that the child's mother was homeless, had no job, had no friends, had no one in the entire world. The male voice repeatedly used the word fuck to the child. The male voice asked the child whether her mother was currently drunk. The male voice said that the paperwork he was going to do something with was going to spin her head.
>
> Near the conclusion, I would say approximately the last five minutes of the phone call, it became apparent that another male[,

---

[2] Unfortunately, the record is devoid of further information on this incident.

Mother's current boyfriend,] was present during the conversation, and he turned to somebody and said he was going to walk away because, quote, I am going to flip the fuck out, close quote. Subsequently, the male said to the person, the male on the phone, you got five minutes left to talk, and that led to an argument between the two males. The argument at times was difficult to understand because the two males were talking over each other. And then it appeared that the phone call abruptly ended.

N.T. Hr'g, 9/28/22, at 9-13 (unnecessary capitalization omitted). The court described this recording as "actual abuse as it was occurring[;] a grown man used a tone with a five year old that was angry, threatening[,] and frightening." Trial Ct. Op. at 11.

Finally, Mother testified that Father regularly threatens "to come and take their daughter." **Id.** at. 3. He has told her that "every dog has its day" and that he "wished [Mother] was dead in a ditch[.]" **Id.**

Based on the above, the trial court determined that the "[t]he evidence that this [c]ourt found credible established ongoing conduct that placed [Mother and Child] in fear of bodily injury." **Id.** at 7. The record supports this finding. The trial court accurately recited Mother's testimony at the PFA hearing, and the evidence was sufficient to establish by a preponderance of the evidence that Father's conduct put Mother and Child in reasonable fear of bodily injury. **See** N.T. Hr'g at 7-16.

Notwithstanding the above, Father argues that because a physical copy of Mother's recording was not entered into evidence, the court should not have considered it. Father's Br. at 13-17. As a result, Father argues that the

evidence was insufficient to establish abuse. *Id.* Although not clearly stated, Father's argument implicates the best evidence rule.[3]

Father's argument fails on two grounds. First, as this Court has previously observed, "[t]he best evidence rule is a rule of evidence, and even if evidence were admitted in violation of the best evidence rule, that would not impact the sufficiency of the evidence. Rather, when reviewing the sufficiency of the evidence, we consider 'all evidence actually received.'" *Commonwealth v. Green*, 204 A.3d 469, 486 (Pa. Super. 2019). Moreover, Father did not object to the contents of the trial court's summary of the phone call or the procedure in which the trial court provided the summary on the record and, as a result, any issue he may have with it is waived. *See id.* (finding evidentiary issue waived for failure to lodge timely and specific objection).

As we discern no error of law or abuse of discretion, we affirm.

Order affirmed.

---

[3] The best evidence rule provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless the[ rules of evidence], other rules prescribed by the Supreme Court, or a statute provides otherwise." Pa.R.E. 1002.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>02/23/2023</u>