J-A06008-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                     :   PENNSYLVANIA
                                     :
             v.                     :
                                     :
                                     :
LUIS ENRIQUE SOTO             :
                                     :
           Appellant        :   No. 793 MDA 2018

Appeal from the Judgment of Sentence April 13, 2018
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s):  CP-36-CR-0001464-2017

BEFORE:   OTT, J., NICHOLS, J., and PELLEGRINI[*], J.

MEMORANDUM BY OTT, J.:             **FILED AUGUST 16, 2019**

Luis Enrique Soto appeals from the judgment of sentence entered April 13, 2018, in the Lancaster County Court of Common Pleas.  The trial court sentenced Soto to an aggregate term of three to 10 years' imprisonment, following his jury conviction of three counts of sexual abuse of children (possession of child pornography) and one count of criminal use of a communication facility.[1]  The charges were filed after an online investigation revealed Soto possessed files containing child pornography, which were subsequently recovered from his cell phone following the execution of a search warrant.  On appeal, Soto raises the following allegations of trial court error: (1) the court erred in denying his motion to suppress (a) the search warrant,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 6312(d) and 7512(a), respectively.

which was not supported by probable cause and was overbroad, and (b) his statements, which were obtained in violation of **Miranda v. Arizona**, 384 U.S. 436 (1966); (2) the court erred in denying his pretrial motion for nominal bail; (3) the court erred in denying his motions in *limine* seeking to preclude the Commonwealth from presenting (a) uncharged images and videos, and (b) the latter portion of his redacted police interview; and (4) the court erred in using an enhanced offense gravity score to calculate his sentence at Count 2. For the reasons below, we affirm.

The pertinent facts underlying Soto's conviction are as follows:

[The present] charges resulted from an investigation initiated by Detective Gregory Wahl of the Office of the District Attorney of Lancaster County. Detective Wahl was conducting an online investigation on the BitTorrent peer-to-peer sharing network.[2] During Detective Wahl's investigation, he encountered a device connected to the internet using an IP address 173.184.103.146, which enabled him to download twenty-nine (29) digital images of files of child pornography through the peer-to-peer file sharing network. On January 9, 2017, Detective Wahl obtained a court order directing Windstream Communications to identify the subscriber of said IP address. On January 18, 2017, Windstream Communications provided information to Detective Wahl that the subscriber was [] Luis E. Soto, residing at 43 East Walnut Street, Ephrata, Pennsylvania. Accordingly, on or about January 30, 2017, Detective Ryan Yarnell[, a member of the District Attorney's Computer Crimes Task Force,] obtained a search warrant for [Soto's] residence[ based on the information obtained by Detective Wahl].

Trial Court Opinion, 7/10/2018, at 1-2.

---

[2] "BitTorrent is a communication protocol for peer-to-peer file sharing (P2P) which is used to distribute data and electronic files over the Internet." https://en.wikipedia.org/wiki/BitTorrent.

On January 31, 2017, at 6:27 a.m., Detective Yarnell, accompanied by 11 other law enforcement officers, executed the search warrant at Soto's residence. Detective Yarnell and some of the other officers were dressed in suits, although others were in uniform. The detective explained to the residents, including Soto, the purpose and scope of the warrant. One of the officers asked the residents if they were familiar with BitTorrent, and Soto indicated he had it on his cell phone. Task Force Detectives Sarah Goss and Graeme Quinn then invited Soto onto the front porch to briefly discuss the matter with him. Detective Goss explained that there was child pornography downloaded from the home, and asked him if he would accompany them to the police station so they could ask him some questions. Soto agreed. Although the officers asked him if he wanted to drive himself, Soto requested a ride from them so that his son would have use of the car. Soto was not placed in handcuffs or restrained in any manner. *See* N.T., 9/22/2017, at 30-32, 49, 52, 66-67.

At the Ephrata Police Station, Soto was led into an interview room. He was not given ***Miranda*** warnings during that 45-minute interview, but agreed to have the interview recorded. When Soto stated he did not want to answer any more questions, the detectives ended the interview and drove him home. ***See id.*** at 53, 58-61. After the forensic examination of Soto's Samsung Galaxy cell phone revealed child pornography on the phone's internal hard drive and SD card, Soto was charged with three counts of sexual abuse of

children (possession of child pornography), and one count of criminal use of a communication facility.

On July 26, 2017, Soto filed an omnibus pretrial motion seeking to suppress (1) any evidence recovered from his cell phone because the search warrant was not supported by probable cause and overbroad, and (2) his statement to police because it was the fruit of the unlawful search warrant and he was not provided with his **Miranda** warnings. Following a two-day hearing, the trial court denied the motion on November 20, 2017. On January 17, 2018, Soto filed a petition for nominal bail pursuant to Pa.R.Crim.P. 600(B). The trial court conducted a hearing on January 31, 2018, and denied the motion on February 1, 2018. Relevant to this appeal, Soto also lodged written and oral motions in *limine* seeking to preclude the Commonwealth from introducing at trial certain portions of his statement to police, and uncharged images and videos recovered from his cell phone's internal hard drive. The motions were denied by the trial court.

The case proceeded to a jury trial conducted on February 12-15, 2018. At the conclusion of the trial, the jury found Soto guilty of all charges. On April 13, 2018, the court sentenced Soto as follows: (1) a term of one and one-half to five years' imprisonment for Count 1 (sexual abuse of children); (2) a consecutive term of one and one-half to five years' imprisonment for Count 2 (sexual abuse of children); (3) a concurrent term of six months to two years' imprisonment for Count 3 (sexual abuse of children); and a

concurrent term of six months to two years' imprisonment for Count 4 (criminal use of a communication facility). This timely appeal follows.[3]

The first two issues raised in Soto's brief challenge the trial court's denial of his motion to suppress the evidence recovered during execution of the search warrant. When considering a challenge to the denial of a suppression motion, "[o]ur standard of review … is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Green*, 204 A.3d 469, 480 (Pa. Super. 2019) (quotation omitted). We are not bound by the trial court's legal determinations. *See id.*

In conducting a review of the underlying basis for a warrant, we must bear in mind the following:

> A search warrant may issue only upon a demonstration of probable cause by an affiant. *See generally Commonwealth v. Gary*, 625 Pa. 183, 91 A.3d 102, 107 (2014). The existence of probable cause is measured by examining the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he [or she] has reasonably trustworthy information are

---

[3] On May 15, 2018, the trial court ordered Soto to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) within 30 days. Soto filed a concise statement on June 15, 2018, which appears to be one-day late. However, while the court's concise statement order is dated and stamped May 15th, a second stamp on the order appears to indicate copies of the order were sent on May 16th. Because the trial court addressed the issues raised in the concise statement in its opinion, we decline to find waiver here. *See Commonwealth v. Brown*, 145 A.3d 184 (Pa. Super. 2016), *appeal denied*, 165 A.3d 892 (Pa. 2017); *Commonwealth v. Boniella*, 158 A.3d 162, 164 (Pa. Super. 2017).

sufficient in and of themselves to warrant a [person] of reasonable caution in the belief that a search should be conducted." ***Commonwealth v. Johnson***, 615 Pa. 354, 42 A.3d 1017, 1031 (2012) (internal quotation marks and citation omitted). A magisterial district judge, when deciding whether to issue a search warrant, must "make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit … including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." ***Id.*** (citation omitted). Conversely, "[a] court reviewing a search warrant determines only if a substantial basis existed for the magistrate to find probable cause." ***Id.*** (citation omitted).

***Commonwealth v. Jacoby***, 170 A.3d 1065, 1081–1082 (Pa. 2017), *cert. denied*, 139 S. Ct. 58 (U.S. 2018). When a defendant's motion to suppress is based upon the lack of probable cause, "[t]he burden is on the Commonwealth to show that the magistrate had a substantial basis for concluding probable cause existed." ***Commonwealth v. Leed***, 186 A.3d 405, 413 (Pa. 2018).

By way of background, the affidavit of probable cause attached to the search warrant details Detective Wahl's investigation in paragraphs 26-35.[4]

---

[4] Preliminarily, we note the search warrant application, and accompanying probable cause affidavit, introduced into evidence by the Commonwealth at the suppression hearing was missing a page. ***See*** N.T., 9/22/2017, 19-26. Although the Commonwealth attempted to introduce the missing page into evidence, the trial court found the missing page was not signed by the magistrate and contained a "disparity as to the warrant control numbers and pagination scheme," and the Commonwealth "was unable to adequately explain why said page was no longer attached to the original search warrant." Trial Court Opinion, 7/10/2018, at 14. Accordingly, the trial court did not "incorporate the missing page into the search warrant for consideration," but rather, limited its review to the four-corners of the signed warrant. ***Id.*** at 15. We similarly limit our review on appeal.

*See* Affidavit of Probable Cause, 1/30/2017, at ¶¶ 26-35.   The investigation

began when Detective Wahl identified an IP address on the BitTorrent peer-

to-peer (P2P) file sharing network that was associated with a specific torrent

file; that file, in turn, "was identified as being a file of investigative interest to

child pornography investigations."  Affidavit of Probable Cause, 1/30/2017, at

¶ 27.  Detective Wahl then downloaded 50 files from that IP address, 29 of

which "depicted child pornography as defined by [18 Pa.C.S. § 6312]."

Affidavit of Probable Cause, 1/30/2017, at ¶ 28.  After listing the 29 files, the

affidavit further avers:

> The above files were mostly of teenage girls in a shower or bath
> naked and were "LS Models".  The rest of the images your Affiant
> would label as erotica.  There were additional partial downloads
> that were not included in the above list where your Affiant could
> identify Child Pornography.

Affidavit of Probable Cause, 1/30/2017, at ¶ 29.

Soto first argues "[t]he factual averments contained in the search

warrant application fail to establish probable cause of a pre-existing or

ongoing crime."  Soto's Brief at 24 (footnote omitted).  He contends the

affidavit does not explain how a computer is "'associated' with a torrent file,"

"how or why or who identified at least one of the 270 files as being of

investigative interest," and why the affiant could obtain only "partial

downloads" of certain files.  *Id.* at 25, 27.  Moreover, Soto insists the

description of the images in paragraph 29 "fails to allege an infraction" of

Section 6312. *Id.* at 27.  He emphasizes that the statute "does not criminalize

all visual depictions of nude children[;]" but rather, only those under the age

of 18, "if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such a depiction." *Id.* at 26. The affidavit's reference to "teenagers" could include those who are aged 18 or 19. Soto maintains his possession of an image of a nude 18-year-old would not be prohibited by the statute. Furthermore, he argues the affidavit does not include any corroboration of the information from Windstream linking the IP address at issue to Soto. *See id.* at 30-31.

The trial court addressed Soto's first claim as follows:

Detective Ryan Yarnell created the search warrant for the defendant and his premises based on information received from Detective Wahl of the Lancaster County District Attorney's Office, which identified the residence of the defendant as the location where child pornography was being downloaded. Detective Wahl obtained the court order and performed the preliminary investigation into the downloading of child pornography or inappropriate digital images at defendant's residence.

Paragraph 35 of the affidavit in support of instant search warrant states that "([o]n Monday, January 9, 2016, Detective Wahl mailed a Court Order in order to identify the subscriber of IP address 173.184.103.146 at the above-mentioned dates and times. On Tuesday, January 18, 2017, Detective Wahl received a response from Windstream Communications Inc. via fax", which identifies the subscriber as Luis E. Soto, 43 East Walnut Street, Ephrata, Pennsylvania. Said information provided sufficient identification and corroboration of the residence and identity of the owner of the internet service thereof.

Moreover, the affidavit in support of the search warrant did specifically establish the likelihood that a criminal offense had occurred in paragraph 29 of the search warrant. The search warrant lists the downloaded files and states that "[t]he above files were mostly of teenage girls in a shower or bath naked and were 'LS Models'. The rest of the images your Affiant would label as erotica. There were additional partial downloads that were not

included in the above list where your Affiant could identify Child Pornography."

Trial Court Opinion, 7/10/2018, at 15-16 (record citations omitted).

We agree with the trial court's conclusion that the magistrate who approved the warrant "had a substantial basis for concluding probable cause existed" to conduct a search of Soto's home. **Leed**, **supra**, 186 A.3d at 413. As recited above, probable cause exists when, based on the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." **Jacoby**, **supra**, at 1082. Here, the probable cause affidavit set forth sufficient facts for the magistrate to conclude there was a "fair probability" child pornography would be found on an electronic device at Soto's home. Despite Soto's protestations, the affidavit establishes the existence of an ongoing crime. Although the affiant's description of the pornographic images could have been more detailed,[5] the affiant explicitly categorized the images of "teenage girls in a shower or bath naked" as "child pornography as defined by PA C.S. Title 18, Crimes Code, Section 6312, Sexual Abuse of Children."[6] Affidavit of Probable Cause,

_____

[5] Soto's claim that a "teenager" could include a person over the age of 18, is more appropriately a sufficiency of the evidence argument for the jury. We find the affiant's description of the images as naked teenagers, coupled with his specific categorization of the images as child pornography as described in the statute, was sufficient for the magistrate to determine "there is a fair probability that … evidence of a crime" would be found at Soto's home. **Jacoby**, **supra**, 170 A.3d at 1082.

[6] Soto insists the affiant's description of the images as "child pornography" was insufficient under Rule of Criminal Procedure 206(6), which requires the

1/30/2017, at ¶ 29.  Furthermore, the fact that the affiant failed to provide further explanation regarding the partial downloads is irrelevant since he listed 29 downloads that contained images of child pornography.

Moreover, we conclude the affidavit provided sufficient facts for the magistrate to conclude the files were shared from a device located at Soto's home.  In paragraph 13, the affiant explained that every device connected to the internet is assigned a "unique" IP number.  Affidavit of Probable Cause, 1/30/2017, at ¶ 13.  After uncovering the unique IP address which "shared" the images of child pornography, Detective Wahl was able to identify the cable company owner of that IP number, and *via* court order, identify the subscriber of that IP address, which was Soto.  Affidavit of Probable Cause, 1/30/2017, at ¶¶ 32-35.  Based upon the documented conduct of collectors of child pornography,[7] which includes maintaining their collections for prolonged periods of time, the affiant provided sufficient probable cause for the

_____

affidavit to "set forth specifically the facts and circumstances which form the basis of the affiant's conclusion that there is probable cause[.]"  Pa.R.Crim.P. 206(6).  Further, he cites a 1961 United States Supreme Court decision for the proposition that a magistrate cannot rely solely on an officer's judgment that an image constitutes child pornography.  **See** Soto's Brief at 28, *citing* **Marcus v. Search Warrants**, 367 U.S. 717 (1961).  However, the **Marcus** case is clearly distinguishable.  That case involved search warrants issued solely on a police officer's opinion, absent any description, that certain magazines sold by the defendant distributors were "obscene … publications."  **Id.** at 722.  The determination that an image is obscene is much more subjective than the determination that an image constitutes child pornography as specified in Section 6312.

[7] **See** Affidavit of Probable Cause, 1/30/2017, at ¶ 39.

magistrate to conclude evidence of a violation of Section 6312 would be located on an electronic device at Soto's home.

Soto also challenges the search warrant as overbroad. *See* Soto's Brief at 32. He maintains "there exists no reasonable or constitutionally excusable nexus between the items listed in paragraph thirty-three of the affidavit, and the exhaustive list of items authorized to be seized[,]" which included adult pornography and "the body of any person." *Id.* at 33 (emphasis removed). Moreover, Soto contends "[a]ny unreasonable discrepancy between the items for which there was probable cause and the items to be seized, reveals that the description was not as specific as was reasonably possible[.]" *Id.*

The Pennsylvania Constitution guarantees its citizens "no warrant to search any place or seize any person or things shall issue without describing them as nearly as may be[.]"[8] PA. CONST., Art. 1, § 8. Accordingly, this Court has imposed a particularity requirement in search warrant cases.

> Thus, "a warrant must name or describe with particularity the property to be seized and the person or place to be searched." *Commonwealth v. Orie*, 88 A.3d 983, 1002 (Pa.Super. 2014) (quoting *Commonwealth v. Rivera*, 816 A.2d 282, 290 (Pa.Super. 2003)). "The particularity requirement prohibits a warrant that is not particular enough and a warrant that is overbroad," which are separate, but related, issues. *Id.* (quoting *Rivera*, 816 A.2d at 290). A warrant lacks sufficient particularity if it "authorizes a search in terms so ambiguous as to allow the executing officers to pick and choose

---

[8] The language in the Pennsylvania Constitution, which requires the warrant "describe the items as specifically as is reasonably possible," is more restrictive than that in the United States Constitution. *See Commonwealth v. Green*, 204 A.3d 469, 481 n.2 (Pa. Super. 2019).

among an individual's possessions to find which items to seize." ***Id.*** (quoting ***Rivera***, 816 A.2d at 290). A warrant is unconstitutionally overbroad if it "authorizes in clear or specific terms the seizure of an entire set of items, or documents, many of which will prove unrelated to the crime under investigation." ***Id.*** at 1002-03 (quoting ***Rivera***, 816 A.2d at 290).

***Commonwealth v. Green***, 204 A.3d 469, 480–481 (Pa. Super. 2019).

With respect to the warrant application at issue, there is no dispute the list of items subject to seizure in Paragraphs 1-6 is extensive. ***See*** Application for Search Warrant, 1/30/2017, at ¶¶ 1-6. Nevertheless, the trial court opined:

> In today's modern electronic world, in cases such as the matter at bar, the police need list every device that could be used to access the internet. The seizure of [Soto's] cellular telephone was clearly covered in the list included in paragraph two. The court specifically finds that, in this matter, the law enforcement officials were not seeking to engage in any general rummaging; rather, they were merely setting forth the necessary exhaustive list of electronic devices capable of connecting to the internet for illicit purposes.

Trial Court Opinion, 7/10/2018, at 17. We agree.

While the warrant permits the seizure of numerous electronic devices, and documentation/records required to access those devices, the application specifically incorporates by reference the probable cause affidavit, which details the affiant's basis for believing child pornography would be found on one or more of those devices. ***See*** Application for Search Warrant, 1/30/2017, at ¶ 2 ("The attached Affidavit of Probable Cause is incorporated by reference in its entirety."). Furthermore, a common-sense reading of the application leads to the conclusion that the police were searching **only** for evidence

relating to the possession or dissemination of child pornography.[9] Moreover, although the warrant sought permission to search/seize "the body of any person" listed, that request was necessary "due to the size and portability of many of today's media storage devices … [which are] usually carried on the body of a person." Application for Search Warrant, 1/20/2017, at ¶ 6. Accordingly, we do not find the warrant was overbroad, and Soto is entitled to no relief with respect to either of his challenges to the search warrant.

Next, Soto contends the trial court erred in denying his motion to suppress the statements he made both at his residence and at the police station on the day the warrant was executed because he was subject to a custodial interrogation without first being advised of **Miranda** warnings.[10] **See** Soto's Brief at 34.

**Miranda** warnings are required only when a defendant is subject to a custodial interrogation by a police officer. **See Commonwealth v. Heggins**, 809 A.2d 908, 914 (Pa. Super. 2002) ("In order to trigger the safeguards of **Miranda**, there must be both custody and interrogation"), *appeal denied*, 827 A.2d 430 (Pa. 2003). Our Supreme Court has explained:

> "The standard for determining whether police have initiated a custodial interrogation or an arrest is an objective one, with due

---

[9] Indeed, there is no accusation that the police seized any documents or data unrelated to the allegations at issue.

[10] We note Soto also claims his statements should be suppressed because they were obtained as a result of an illegal search based upon a defective warrant. **See** Soto's Brief at 34. However, as we have found, *supra*, that Soto's challenge to his search warrant is meritless, this claim is now moot.

- 13 -

consideration given to the reasonable impression conveyed to the person interrogated rather than the strictly subjective view of the troopers or the person being seized." … A person is in custody when he is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation.

*Commonwealth v. Yandamuri*, 159 A.3d 503, 517-518 (Pa. 2017) (internal citations omitted). When determining whether a person is in custody for *Miranda* purposes,

[t]he court must consider the totality of circumstances, including factors such as "the basis for the detention; the duration; the location; whether the suspect was transferred against his will, how far, and why; whether restraints were used; the show, threat or use of force; and the methods of investigation used to confirm or dispel suspicions."

*Commonwealth v. Cruz*, 71 A.3d 998, 1004 (Pa. Super. 2013) (citation omitted), *appeal denied*, 81 A.3d 75 (Pa. 2013). "Further, an 'interrogation' occurs when the police 'should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect.'" *Commonwealth v. Clinton*, 905 A.2d 1026, 1032 (Pa. Super. 2006) (quotation omitted), *appeal denied*, 934 A.2d 71 (Pa. 2007).

Here, Soto seeks to suppress statements he made both at his home and at the police station. He insists he was in custody when 12 police officers entered his home to execute the warrant, and informed both him and his family that the warrant authorized the police to seize the body of any person present. *See* Soto's Brief at 35. He maintains, "[f]rom this point forward, it would have been reasonable for him to believe that his freedom of action or

movement was restricted[.]" *Id.* at 36. Moreover, Soto argues that after he indicated he had the BitTorrent app on his phone, the officers "isolated" him from his family. *Id.* He was subsequently "escorted" to the police station in an unmarked vehicle, and led to an interview room with a closed door. *Id.* Relying upon *United States v. Craighead*, 539 F.3d 073 (9th Cir. 2008), Soto contends he made his first inculpatory admission in the "police dominated atmosphere" of his own home, before being separated from his family and escorted by police to his front porch and later to the police station. *See* Soto's Brief at 37-38. He insists that although he was told he was free to leave, "when considered within the context of the scene as a whole, the 'free-to-leave' recitation did not render the questioning of Mr. Soto noncustodial." *Id.* at 38.

Preliminarily, we note that the only case upon which Soto relies, *Craighead*, is a decision of the Ninth Circuit Court of Appeals. It is not binding on this Court, and has never been cited by any court of this Commonwealth. *See Commonwealth v. Walker*, 139 A.3d 225, 230 (Pa. Super. 2016) ("Absent a United States Supreme Court pronouncement, decisions of federal courts are not binding on state courts") (citation omitted), *appeal denied*, 158 A.3d 1243 (Pa. 2016).

Nevertheless, after considering the factors set forth in *Cruz*, *supra*, we have no hesitation in concluding Soto was not "in custody" for *Miranda* purposes when he made potentially inculpatory statements. The first "statement" he made, *i.e.*, that he had the BitTorrent app on his phone, was

during the execution of the search warrant at his home. Although 12 police officers were present, Detective Yarnell testified that his tone was conversational when he informed the residents of the warrant. *See* N.T., 9/22/2017, at 30, 34-35, 52. Furthermore, shortly after they arrived, Detective Wahl asked the residents if they were familiar with BitTorrent. *See id.* at 82. When Soto indicated he had the app on his phone, Detective Goss and Quinn asked him to speak with them on the front porch because of the sensitive nature of the subject matter. *See id.* at 50-52. Again, their tone was conversational and non-threatening. When they asked Soto if he would go to the station for an interview, he agreed without hesitation. Furthermore, the detectives gave him the option to drive himself, but he chose to leave his own car at home. Soto was never handcuffed during the 45 minute interview, was told he was free to leave, and was, in fact, permitted to leave when he asked to do so. *See id.* at 53, 57-58, 61, 66-68, 71, 74-79.

Although we acknowledge the presence of 12 officers may have been excessive, there was no testimony that the officers acted in any intimidating manner; rather, they showed restraint and respect when they asked to speak with Soto on the porch due to the sensitive nature of the subject matter, and provided him with the option to drive himself to the police station. Accordingly, based upon the testimony at the suppression hearing, we find no basis to overturn the trial court's determination that Soto "was not in custody at the time of his interrogation by Detectives Goss and Quinn." Trial Court Opinion, 7/10/2018, at 20. *See Commonwealth v. McCoy*, 154 A.3d 813,

816 (Pa. Super. 2017) (when considering a motion to suppress, "it is within the lower court's province to pass on the credibility of witnesses and determine the weight to be given to their testimony") (citation omitted).

In his third issue, Soto argues the trial court erred in denying his pretrial motion for nominal bail pursuant to Pa.R.Crim.P. 600(B).[11] *See* Soto's Brief at 39-43. We find this claim is moot because Soto is no longer in pretrial detention, and in fact, "has been convicted and is incarcerated." *See Commonwealth v. Samuel*, 102 A.3d 1001, 1006 (Pa. Super. 2014), *appeal denied*, 134 A.3d 56 (Pa. 2016). Soto's argument consists solely of a straightforward calculation of time delays attributable to both the Commonwealth and the defense.[12] Furthermore, he received credit against

---

[11] Rule 600(B) mandates, *inter alia*, "[e]xcept in cases in which the defendant is not entitled to release on bail as provided by law, no defendant shall be held in pretrial incarceration in excess of … 180 days from the date on which the complaint is filed[.]" Pa.R.Crim.P. 600(B)(1). The Rule explains that "only periods of delay caused by the defendant shall be excluded for the computation of the length of time of any pretrial incarceration," and provides that a defendant who is held beyond the mandated period may file a motion requesting his immediate release on nominal bail. Pa.R.Crim.P. 600(C)(2), (D)(2).

[12] *Compare Commonwealth v. Sloan*, 907 A.2d 460, 465 (Pa. 2006) (addressing moot Rule 600 issue because the "appeal presents an issue of public importance that this Court has yet to address, regarding whether an accused who is incarcerated for more than 180 days is entitled to unconditional release pursuant to Rule 600[]."); *Commonwealth v. Dixon*, 907 A.2d 468, 469-470 (Pa. 2006) (addressing moot Rule 600 issue to determine whether an interlocutory appeal by the Commonwealth, which extends the 365-day time limit for trial, also extends the 180-day limit for pretrial incarceration).

his sentence for all time-served in pretrial detention. *See* N.T., 4/13/2018, at 28. Accordingly, we decline to address this claim on appeal.

In his next issue, Soto challenges the trial court's denial of his oral motion in *limine* to preclude the Commonwealth from presenting evidence regarding 176 images and one video depicting child pornography recovered from the internal hard drive of his cell phone. By way of background, in the criminal complaint and accompanying affidavit of probable cause, the Commonwealth averred that it recovered 678 images and nine videos depicting child pornography from the SD memory card in Soto's cell phone. *See* Criminal Complaint, 2/2/2017, at Offenses 1-3; Affidavit of Probable Cause, 2/2/2017, at ¶ 5. In the criminal information, however, the Commonwealth charged Soto more generally, asserting he possessed "multiple digital images" and "multiple digital videos" depicting children under the age of 18 "engaged in a sex act or the simulation of a sex act on his Samsung Galaxy Note 4 cellular phone." Criminal Information, 5/16/2017, at Counts 1-3. However, at each count, the Commonwealth provided notice that it was seeking certain sentencing enhancements: (1) at Count 1, (a) an enhancement of 18 months' based upon Soto's possession of 678 digital images, and (b) an enhanced offense gravity score ("OGS") of 7, based on his possession of 536 images of children under the age of 13; (2) at Count 2, an additional one point added to the OGS based on six videos; and (3) at Count 3, an enhanced OGS of 7 based on three videos depicting children under the age of 13. *See* Criminal Information, 5/16/2007.

During a pretrial hearing conducted on February 9, 2017,[13] Soto's counsel objected to the introduction of the 176 images and one video extracted from the cell phone's internal hard drive, but not from the SD card. *See* N.T., 2/9/2018, at 32. This issue was raised during a discussion concerning a discovery motion Soto filed on February 7, 2018, seeking a copy of the forensic report. Counsel stated that although she reviewed the original 678 images and nine videos recovered from the SD card, she was never provided with the opportunity to review the additional images and video extracted from the cell phone's internal hard drive, or the forensic extraction report concerning those images.[14] *See id.* While counsel acknowledged she knew those additional images and video were recovered based upon a four-page summary forensic report she received in July of 2017, she stated she did not review the images, or the accompanying detailed report relating to the extraction, because she "was told [by the prosecutor that Soto] wasn't being charged with" them, an allegation the Commonwealth adamantly denied. *Id.* at 48. *See also* N.T., 2/9/2018, at 45; 2/12/2018, at 102. The

---

[13] February 9th was a Friday. Trial was scheduled to begin on Monday, February 12th.

[14] The Commonwealth explained that it cannot provide copies of forensic reports containing images of child pornography to defense counsel: "I do believe it is against the law for the Commonwealth to disseminate these images to anyone other than the individual who is investigating the crime and the prosecutor who is prosecuting the crime." N.T., 2/9/2018, at 27-28. Rather, the Commonwealth must provide counsel with the opportunity to review the document at its office.

Commonwealth insisted the criminal information provided sufficient notice that it intended to prosecute Soto for all the images recovered from his cell phone because it referred to multiple images; "[w]e intentionally do not put a number in the to wit [paragraph … t]hat way the jury can determine how many of the [] 854 images are child pornography there." *Id.* at 50. The court directed the Commonwealth to make the additional forensic report available to Soto's counsel over the weekend.

On the first day of trial, following *voir dire*, Soto made an oral motion in *limine* to preclude reference to any of the images and video recovered from his cell phone's internal hard drive. *See* N.T., 2/12/2018, at 88. He argued he was "never on notice" that he would be prosecuted for those items, and he was prejudiced because the forensic report involves "different software" and "a whole different set of expert knowledge." *Id.* at 91-92. The trial court denied the motion, concluding that the criminal information, while perhaps "confusing," was sufficient to inform Soto of the charges. *Id.* at 92. Furthermore, the court noted counsel was provided with discovery, which referenced the images recovered from the internal hard drive, months before trial and could have filed a bill of particulars, but did not do so. *See id.* at 92, 99.

On appeal, Soto insists "the criminal information failed to provide sufficient notice that [he] was being charged with anything other than the originally charged 678 images and nine videos recovered from the SD card." Soto's Brief at 44-45 (footnote omitted). He contends that because the

language in the enhancement notices referenced the exact number of images and videos recovered from the SD card, it was reasonable for him to assume he was only being charged with those images and videos. With regard to the court's suggestion that he could have filed a bill of particulars, Soto maintains he "never claimed that the information was deficient for lack of particularity[;]" rather, his complaint is that he was charged only with the images and videos recovered from the SD card. *Id.* at 47. Moreover, Soto argues he was prejudiced when the Commonwealth was permitted to present evidence concerning the additional images and video because "they changed the factual scenario supporting the original charges, and rendered defenses that may have been raised against the contents of the SD card ineffective."[15] *Id.* at 49.

"Initially, we note that, '[w]hen reviewing the denial of a motion *in limine,* we apply an evidentiary abuse of discretion standard of review.'" *Commonwealth v. Hitcho*, 123 A.3d 731, 747 (Pa. 2015) (citation omitted). Here, Soto's argument is based on his assertion that the Criminal Information

---

[15] Soto maintains that because the images and videos on the SD card were recovered deleted files, they contained no "attendant data" regarding how they got there and when or if they were ever viewed. Soto's Brief at 51. "In other words, the defense of mistaken downloads and unknowing possession was available as to the contents of the SD card." *Id.* However, Soto claims these defenses were "rendered ineffective" when the Commonwealth presented evidence that additional images were recovered from "various locations on the phone" bearing dates just weeks before the filing of the criminal complaint. *Id.* at 52. As will be discussed *infra*, we need not address Soto's prejudice argument.

did not provide sufficient notice that he would be prosecuted for possessing the 176 images and one video recovered from the internal hard drive of his cell phone.

> The purpose of an Information or an Indictment is to provide the accused with sufficient notice to prepare a defense, and to ensure that he will not be tried twice for the same act. An Indictment or an Information is sufficient if it sets forth the elements of the offense intended to be charged with sufficient detail that the defendant is apprised of what he must be prepared to meet, and may plead double jeopardy in a future prosecution based on the same set of events.

***Commonwealth v. Alston***, 651 A.2d 1092, 1095 (Pa. 1994).

The trial court addressed this claim in its opinion as follows:

[I]t must be recognized that the Criminal Information filed in this matter was in full compliance with the requirements of Rule 560 of the Pennsylvania Rules of Criminal Procedure, as applicable at the time of the current offenses. Stated another way, the Criminal Information filed in this matter contained all required averments as noted above. Accordingly, it is clear, that in addition to complying with all other requirements imposed by Rule 560 of the Pennsylvania Rules of Criminal Procedure, the Criminal Information sufficiently provided a plain and concise statement of the essential elements of the offenses substantially the same as cognate to the offenses alleged in the complaint.

The court is cognizant that [Soto's] claims are currently based upon an assertion of lack of proper notice or purported confusion regarding the specific images and videos upon which the Commonwealth would be proceeding at trial. Specifically, defense counsel advanced an argument that she assumed that the Commonwealth was only seeking prosecution of [Soto] on the 678 digital images and 9 video files of child pornography contained on the SD memory case. Defense counsel asserted that she was unaware that he Commonwealth sought prosecution relative to the 176 digital files and 1 video file of child pornography contained on the internal hard drive of [Soto's] cellular telephone. While recognizing, with a certain degree of disapproval, the imprecise language utilized relative to the notice provisions contained in the

Criminal Information relative to the requested sexual abuse of children enhancements under the applicable Sentencing Guidelines, the court does not find said imprecision to be fatal in nature or that such imprecision caused any undue surprise to [Soto] or his counsel.

Initially, as reflected above, it must be recognized that the Criminal Information clearly and precisely stated that [Soto] was charged with the possession of **multiple** images and videos of child pornography on **his Samsung Galaxy Note 4 cellular telephone**, without specific qualification as to the number of images and videos.

Further, a comprehensive review of the charging documents and procedural history of the current matter demonstrates that, through the discovery process, [Soto] was properly provided notice of all the images and videos depicting child pornography which the Commonwealth alleged he possessed on both the SD memory card and internal hard drive of his cellular telephone. It is specifically noted that defense counsel acknowledged that she had received discovery materials from the attorney for the Commonwealth on May 1, 2017. Contained within said discovery materials were redacted reports prepared by Sergeant John Duby of the Lancaster County District Attorney's Office, who performed the forensic analysis on both [Soto's] cellular telephone and the enclosed SD memory card. Although the redacted reports did not contain the images and video depictions of child pornography, they did explicitly reference that SD storage card contained 678 digital images and 9 video files of child pornography and the internal hard drive of the cellular telephone contained 176 digital images and 1 video file of child pornography. Defense counsel acknowledged that she had the opportunity [to review] the images of child pornography at the forensic facility operated by the Office of the District Attorney in July 2017 and that nothing prevented her from further viewing of the images and unredacted reports. Although the Commonwealth, in no way, restricted counsel's ability to further view the images, counsel claimed an understanding that [Soto] was only being charged with the images and video depictions contained on the memory card, although Sergeant Duby's report clearly addressed all images and video depictions contained on both the memory card and internal hard drive of [Soto's] cellular telephone. At the conclusion of the pre-trial hearing held on February 9, 2018, the Friday before the scheduled commencement of trial, the court directed that counsel meet on the weekend prior to trial to provide defense counsel with

- 23 -

the opportunity to view the 176 digital images and 1 video file contained on the internal hard drive of the cellular telephone. It is specifically noted that counsel for [Soto] never sought to continue trial in the instant matter.

To the extent that [Soto] claims uncertainty as to the nature of the instant prosecution, [Soto], under the applicable rules, was free to file a request for a bill of particulars to alleviate any purported surprise. [Soto] failed to do so. In response to the court's inquiries in this regard, defense counsel initially attempted to explain any failure to request a bill of particulars by noting that the Criminal Information in this matter was filed on May 16, 2017, which was subsequent to [Soto's] formal arraignment in the Lancaster County Court of Common Pleas on April 13, 2017. Nothing prevented [Soto] from making such request immediately following the filing of the Criminal Information and asserting that any delay in such request was precipitated by the delay in the filing of the Criminal Information. Further, defense counsel attempted to justify [Soto's] failure to file any request for a bill of particulars by stating "who files a bill of particulars". In all candor, the Commonwealth simply cannot be deemed as responsible for any failure of [Soto] or his counsel to avail themselves of the proper remedies as provided by the applicable Rules of Criminal Procedure.

Based upon the totality of this court's review of the charging documents and the procedural history of this matter as addressed above, the court finds [Soto's] claims in this regard to be wholly lacking in credibility. This court finds [Soto's] claims in this regard to be fabricated as the result of either strategic gamesmanship or lack of due diligence by defense counsel, rather than emanating from any genuine lack of notice or confusion. In either such scenario, the Commonwealth cannot be held to bear the heavy burden of the requested preclusion of images and video depictions which the Commonwealth had properly disclosed to defense counsel on May 1, 2017, more than ten months prior to trial. Accordingly, [Soto] has failed to credibly demonstrate any resulting prejudice and his claim in this regard lacks merit.[14, 15]

_____

[14] Although not relevant to disposition of [Soto's] current claim, it is noted that the Commonwealth specifically chose to consolidate multiple images or video depictions in certain charged counts, rather than seeking an individual count relative to each image or video depiction. Accordingly, the Commonwealth would not need

- 24 -

[to] seek any amendment to the Criminal Information relative to any change regarding the quantity of images or video depictions.

[15] While not directly applicable to the disposition of [Soto's] current claim, this court notes that, pursuant to Rule 564 of the Pennsylvania Rules of Criminal Procedure and the related [] authority of our appellate courts, if the Commonwealth would have sought to amend the Criminal Information prior to the commencement of trial in the instant matter, any such attempted amendment would likely have been deemed appropriate given the attendant facts in this matter. The court addressed such rationale on the record at trial. (N.T.T., pgs. 97-99). **See**, **Commonwealth v. Sinclair**, 897 A.2d 1218 (Pa. Super. 2006); **Commonwealth v. Grekis**, 601 A.2d 1284 (Pa. Super. 1992).

Trial Court Opinion, 7/10/2018, at 29-33 (emphasis in original; record citations and some footnotes omitted).

In summary, the trial court concluded the criminal information and discovery materials turned over by the Commonwealth provided Soto with sufficient notice of the charges he faced so that he could fully prepare for trial. We find no abuse of discretion in the trial court's common-sense analysis of this claim. **See Hitcho**, **supra**. Furthermore, because we agree the charges filed included the 176 images and one video recovered from the internal hard drive of Soto's cell phone, we need not address his argument concerning prejudice. Accordingly, Soto is entitled to no relief on this claim.

Soto next contends the trial court erred or abused its discretion in denying his pretrial written motion in *limine* to preclude the entire latter portion of his interview with police. **See** Soto's Brief at 53. Again, we review the court's denial of a motion in *limine* for an abuse of discretion. **See Hitcho**, **supra**, 123 A.3d at 747.

On February 7, 2018, Soto filed a motion in *limine* seeking to preclude, *inter alia*, certain portions of his recorded police statement, including hearsay statements made by the interrogating officers, and Soto's invocation of his right to counsel. **See** Motion in *Limine*, 2/7/2018, at ¶¶ 29-34. At the pretrial hearing, Soto requested the court "not permit the jury to hear anything after minute 21 of the recorded interview[.]" N.T., 2/9/2018, at 4. After Soto detailed his objections, the Commonwealth agreed that some of the statements during the interview needed to be redacted for trial. **See id.** at 10. It created a redacted recording over the weekend. Thereafter, on the first day of trial the following Monday, Soto again requested the court preclude the Commonwealth from using any part of the latter portion of the interview, stating he had "multiple objections" after reviewing the redacted recording. N.T., 2/12/2018, at 71. The trial court considered each specific objection, but ultimately concluded Soto was entitled to no relief.

On appeal, Soto repeats his general argument that "[t]he entirety of the latter portion of the interview should have been deemed inadmissible" because it lacked probative value and, particularly after the redaction, was unfairly prejudicial. Soto's Brief at 58. He also specifically objects to the following: (1) a statement by one of the detectives that the officers searching the phone told him there were "multiple searches" and "this wasn't a one-time accidental download … that you're (Soto) actually physically searching for this stuff[,]" because the statement relays hearsay and implies the detective found Soto to

be dishonest;[16] (2) any statements made after Soto said "I don't know if I should answer any questions without a lawyer" because he invoked his right to counsel;[17] (3) the detective's statement that "there are people that actually act on these impulses[,]" because it was unfairly prejudicial;[18] and (4) fifteen seconds of silence after the detective asked Soto, "so you pretty much just contain it to your cell phone?" because this constituted a violation of his right to remain silent.[19] We will consider Soto's claims seriatim.

With regard to the detective's statement that "this wasn't a one-time accidental download[,]"[20] Soto objects on two bases. First, he asserts the statement constitutes hearsay because the detective was relaying information he purportedly learned from other officers. *See* Soto's Brief at 54. Second, Soto insists the detective's statement inferred "Soto had not been honest

---

[16] Soto's Brief at 53-54, 55.

[17] *Id.* at 55.

[18] *Id.* at 56.

[19] *Id.*

[20] *See* Soto's Brief at 53. We note the certified record includes both the original and redacted audio recordings of Soto's police interview. However, the printed version of the redacted statement that appears in Soto's reproduced record is not in the certified record. "We have repeatedly held that our review is limited to those facts which are contained in the certified record" and a document that is not included in the certified record "does not exist for purposes of our review." *Commonwealth v. O'Black*, 897 A.2d 1234, 1240 (Pa. Super. 2006).

during the first portion of the interview" and therefore, "constitute[d] inadmissible lay opinion." *Id.* at 55.

In **Commonwealth v. Kitchen**, 730 A.2d 513 (Pa. Super. 1999), a panel of this Court considered whether a trial court erred in ordering the Commonwealth to redact certain parts of the defendant's statement to police. Relevant to the claim herein, the panel opined:

> The trial court excluded any police comments that informed [the defendant] that there were witnesses who had enlightened them regarding [the defendant's] connection to the murder. Again, we fail to see why such comments should be excluded from the tapes since the criminal complaint and attached affidavit of probable cause reveal the identity of these witnesses and the Commonwealth avers that they will testify at [the defendant's] trial. The comments were not prejudicial to [the defendant], were not inflammatory and do not constitute hearsay evidence since the witnesses will allegedly testify at [the defendant's] trial and can be cross-examined by [defense] counsel. Hence, any comments regarding witnesses who will connect [the defendant] to the murder can be included in the videotapes displayed to the jury.

> \* \* \* \*

> The trial court also excluded several instances where the police, either directly or indirectly, accused [the defendant] of lying. We agree with Judge Hogan that these comments must be redacted from the videotapes. When the troopers stated to [the defendant], "You're lying", or "We know that you're lying" or phrases to that effect, their statements were akin to a prosecutor offering his or her opinion of the truth or falsity of the evidence presented by a criminal defendant, and such opinions are inadmissible at trial. **Commonwealth v. Henry**, 550 Pa. 346, 706 A.2d 313 (1997). The troopers' statements could also be analogized to a prosecutor's personal opinion, either in argument or via witnesses from the stand, as to the guilt or innocence of a criminal defendant, which is inadmissible at trial. **Commonwealth v. Peterkin**, 538 Pa. 455, 649 A.2d 121

- 28 -

(1994), *cert. denied,* 515 U.S. 1137, 115 S.Ct. 2569, 132 L.Ed.2d 821 (1995).

*Id.* at 521.

Regarding Soto's hearsay challenge, the trial court found Detective Quinn's statement did not constitute inadmissible hearsay under *Kitchen* because he simply relayed what another officer told him about the investigation, and that officer later testified at trial. *See* Trial Court Opinion, 7/10/2018, at 42-43. *See also* N.T., 2/9/2018, at 17; N.T., 2/12/2018, at 72.[21] Furthermore, the court did direct the Commonwealth to redact certain comments by Detective Quinn, which expressed his opinion that Soto was not being truthful. *See* N.T., 2/9/2018, at 17-18. However, we agree Detective Quinn's statement that "this wasn't a one-time download" did not constitute a comment on Soto's credibility. Rather, as stated above, the detective was simply relaying what he had learned from another officer. *See* N.T., 2/12/2018, at 72.

With regard to Soto's purported invocation of his right to counsel, Soto's argument on appeal differs from the claim he preserved in the trial court. On appeal, Soto argues he first invoked his right to counsel during the interview following a short break after minute 21. *See* Soto's Brief at 54. When the detectives returned, they began questioning him specifically about his internet searches for child pornography, Soto stated: "I don't know if I should answer

_____

[21] At the pretrial hearing, the Commonwealth explained the detective was "just relaying what Detective Wahl has told him on the phone. And Detective Wahl will testify to what he was telling the individuals at the interview, what was happening at the search warrant[.]" N.T., 2/9/2018, at 16.

any questions without a lawyer." Interview with Luis Soto (unredacted), 1/31/2017, at 33:44. Detective Quinn responded, "Okay… well that's a decision you have to make … do you have a lawyer in mind?" to which Soto replied, "No." *Id.* at 33:49-33:53. At that point the interview continued. He now argues his statement constituted a "clear and unequivocal invocation" of his right to counsel, and the interview should have stopped at that time. Soto's Brief at 55.

However, in his motion in *limine*, Soto requested only that the court "preclude from evidence any and all statements by him invoking his Fifth Amendment rights." Motion in *Limine*, 2/7/2018, at unnumbered 6. During argument on the motion, the Commonwealth agreed to redact both the statement above, in which Soto questioned whether he **might** need a lawyer, as well as a later statement he made when he actually asked for a lawyer and the interview ceased. *See* N.T., 9/2/2018, at 10-11. When counsel objected to the redacted interview on the morning of trial, she did **not** argue that Soto had invoked his right to counsel when he said, "I don't know if I should answer any questions without a lawyer[,]"[22] and cite that alleged invocation as a basis to preclude the remaining statement. *See* N.T., 2/12/2018, at 70-87. Furthermore, Soto's very general Pa.R.A.P. 1925(b) concise statement framed this issue as follows: "The Trial Court erred in denying [] Soto's Motion in *Limine*, permitting the Commonwealth to present prejudicial and nonprobative

_____

[22] Interview with Luis Soto (unredacted), 1/31/2017, at 33:44.

portions of [] Soto's recorded interview at trial." Statement of Errors Complained of on Appeal, 6/15/2018, at ¶ 5. Accordingly, we could find the issue as framed in Soto's brief waived.

Nevertheless, we note that the trial court found Soto's statement "did not constitute a clear and unequivocal invocation of his rights against self-incrimination and to the assistance of counsel[,]" such that the interview should have ceased. Trial Court Opinion, 7/10/2018, at 37. We agree.

To trigger Fifth Amendment protections, "a defendant's request for counsel must be sufficiently clear 'that a reasonable police officer would understand the statement to be a request for an attorney.'" ***Commonwealth v. Champney***, 161 A.3d 265, 272 (Pa. Super. 2017), *appeal denied*, 173 A.3d 268 (Pa. 2017).

> The inquiry into whether or not a suspect has invoked the right to counsel is an objective one. The [United States Supreme] Court explained that a suspect "must articulate his desire to have counsel present **sufficiently clearly that a reasonable police officer in the circumstances would understand the statement be a request for an attorney**." However, if the statement is "ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel," police are not required to cease questioning.

***Id.*** at 273 (citations omitted and emphasis in original). Here, we agree with the trial court's determination that Soto's statement - "I don't know if I should answer any questions without a lawyer" – was not a clear and unequivocal request for counsel, and the remaining redacted portion of the interview could be heard by the jury. Accordingly, no relief is warranted.

Soto also insists Detective Quinn's statement, "there are people that actually act out ... on these impulses," should have been "excluded in light of its danger of unfair prejudice." Soto's Brief at 56. The trial court addressed this objection as follows:

> It is noted that defense counsel was unable to articulate a concise basis for such objection. Rather, counsel argued that said comments were somehow a reference to [Soto's] need for counseling or a prejudicial remark as to his character. As aptly noted by the attorney for the Cmmownealth, law enforcement officers have long been permitted to use some trickery or deceit in an effort to elicit inclupatory statements. This court finds that such comment did not rise to the level of any opinion regarding the veracity of [Soto] nor did it portray the character of [Soto] in any negative manner. Rather, it is the firm belief of the court that said comment was made by the detective in an effort to elicit a response from [Soto]. As such, there is no resulting prejudicial effect to [Soto].

Trial Court Opinion, 7/10/2018, at 48-49. Soto offers no basis for us to conclude the trial court abused its discretion in this ruling.

Lastly, Soto argues his silence following Detective Quinn's question, "so you pretty much just contain it to your cell phone?" should have been precluded as a tacit admission, violative of his right to remain silent. Soto's Brief at 56.

It is well-established that:

> Evidence of a defendant's silence in refusing to deny guilt after an accusation of guilt has been made (often referred to as a tacit admission) is generally not admissible where the silence occurred while the defendant is in police custody because a contrary policy would effectively vitiate a defendant's constitutionally guaranteed right against self-incrimination. However, this principal of not allowing evidence of a tacit admission by the defendant does not extend to instances where the defendant does not choose to

remain silent but instead volunteers responses to police questioning.

***Commonwealth v. Hawkins***, 701 A.2d 492, 509 (Pa. 1997) (citation omitted), *cert. denied*, 523 U.S. 1083 (1998).  Soto insists his 15 seconds of silence should have been redacted because the silence was "ultimately broken by Detective Goss."  Soto's Brief at 56.

Our review of the redacted audio recording reveals no abuse of discretion on the part of the trial court.  In fact, contrary to Soto's characterization, his mumbled response of "yes" or "um" to Detective Quinn's question can be heard on the recording.  Interview with Luis Soto (unredacted), 1/31/2017, at 35:05-35:12; Interview with Luis Soto (redacted), 2/14/2018, at 33:29-33:34.[23]  Accordingly, because Soto, ultimately, did utter a response to Detective Quinn's question, any silence preceding the response is not excludable under ***Hawkins***.

Soto also argues that, even after the redactions, the latter part of the interview "lacked probative value" and "mislead (sic) the jury regarding the actual verbal exchanges that occurred."  Soto's Brief at 58.  Indeed, he maintains that because certain questions or comments were redacted, several of his statements that were not redacted did not make sense.  Accordingly, he contends "the entirety of the latter portion of the interview" should have

---

[23] We note that the printed version of the redacted statement contained in the reproduced record does not include any response to this question. Nevertheless, as we explained *supra*, the printed statement is not in the certified record. **See supra**, n. 19.  Furthermore, we would find the audio recording itself controls.

been excluded. *Id.* The trial court rejected this general argument, finding "defense counsel was unable to specifically articulate any resulting prejudice." Trial Court Opinion, 7/10/2018, at 48. Soto offers no basis upon which to find the court abused its discretion in this ruling. Moreover, our review of the redacted interview does not support Soto's claim. *See Hitcho*, *supra*. Accordingly, we conclude he is entitled to no relief.

In his final issue on appeal, Soto contends the trial court applied an incorrect offense gravity score ("OGS") in sentencing him on Count 2, which involved his possession of multiple videos depicting children engaging in indecent contact. *See* Soto's Brief at 60. Specifically, he argues the court erred in double counting the "indecent contact" which led to an enhanced OGS. *See id.*

"A claim that the sentencing court used an incorrect OGS is a challenge to the discretionary aspects of one's sentence." *Commonwealth v. Williams*, 151 A.3d 621, 625 (Pa. Super. 2016)

> It is well settled that a challenge to the discretionary aspects of a sentence is a petition for permission to appeal, as the right to pursue such a claim is not absolute. *Commonwealth v. Treadway*, 104 A.3d 597, 599 (Pa. Super. 2014). Before this Court may review the merits of a challenge to the discretionary aspects of a sentence, we must engage in the following four-pronged analysis:
>
> > [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed

> from is not appropriate under the Sentencing Code, 42
> Pa.C.S. § 9781(b).
>
> **Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010)
> (citing **Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa. Super.
> 2006)).

**Id.** In the present case, Soto preserved this claim by raising it at his sentencing hearing, filing a timely appeal, and including the requisite Pa.R.A.P. 2119(f) statement in his brief. **See** N.T., 4/13/2018, at 7-11; Soto's Brief at 59. Furthermore, this Court has held that an allegation the trial court applied an incorrect OGS raises a substantial question for our review. **See Commonwealth v. Archer**, 722 A.2d 203, 210-211 (Pa. Super. 1998) (*en banc*). Accordingly, we may address this issue on appeal.

Soto's claim focuses on the enhanced OGS of 10 the court applied to Count 2. In the Criminal Information, Soto was charged with possessing "multiple digital videos depicting children under the age of 18 engaged in a sex act or the simulation of a sex act which involved indecent contact[.]" Information, 5/16/2019, at Count 2. Furthermore, the Commonwealth sought an enhancement of one OGS point based upon "the six (6) indecent contact of the digital videos he possessed." **Id.** at Count 2, Enhancement Notice.

Under the sexual abuse of children statute, possession of child pornography is generally graded as a third-degree felony. **See** 18 Pa.C.S. § 6312(d.1)(2)(i). However, the statue provides:

> When a person commits an offense graded under paragraph (1)
> or (2)(i) and indecent contact with the child as defined in [18
> Pa.C.S.] 3101 (relating to definitions) is depicted, the grading of
> the offense shall be one grade higher than the grade specified in
> paragraph (1) or (2)(i).

18 Pa.C.S. § 6312(d)(3). Accordingly, in the present case, Soto's conviction at Count 2 was properly graded as a felony of the second degree, after the jury determined the videos depicted "indecent contact." Verdict, 2/15/2018.

However, the Guidelines also provide for certain sentencing enhancements to conviction of Section 6312. Pursuant to 204 Pa.Code § 303.10(e), an enhancement applies when the images possessed by the defendant "portray[] … an act which would constitute a crime under … 18 Pa.C.S. Chapter 31 (relating to sexual offenses)." 204 Pa.Code § 303.10(e)(2)(iv). Under those circumstances, the court must consider an OGS which is "one point higher than the assignments for 18 Pa.C.S. § 6312 … listed in 303.15." 204 Pa.Code § 303.9(l)(2). **See also** 204 Pa. Code § 303.15 (OGS of 9 for conviction of Section 6312(d), possession of child pornography with indecent contact depicted).

At the sentencing hearing, Soto's counsel objected to the guidelines range provided by the Commonwealth for Count 2. She noted that pursuant to Section 6312(d)(3), the Commonwealth increased the grade of the offense to a felony of the second degree, and, therefore, started with an OGS of 9.[24] However, she argued that the Commonwealth then increased the OGS to 10 based upon application of the enhancement at Section 303.9(l)(2), which resulted in a standard guidelines range of 22 to 36 months' imprisonment. Counsel insisted that in doing so, the Commonwealth "double count[ed] the

---

[24] Soto does not contest this grade increase.

fact of the indecent contact and enhanc[ed] the punishment for a fact that was an element of the offense itself." N.T., 4/13/2018, at 8. The court rejected this claim, but imposed on Count 2 a mitigated range term of 18 to 60 months' imprisonment. *See id.* at 26.

Soto raises this same claim on appeal. He contends "it is generally 'impermissible for a court to consider factors already included within the sentencing guidelines as the sole reason or increasing or decreasing a sentence." Soto's Brief at 61, *quoting* **Commonwealth v. Simpson**, 829 A.2d 334, 339 (Pa. Super. 2003). Comparing this enhancement to the deadly weapon enhancement at Section 303.10(a)(3), he notes "sentencing courts are specifically prohibited from applying the enhancement where the 'possession of a deadly weapon is an element of the statutory definition.'" Soto's Brief at 61, *quoting* 204 Pa.Code § 303.10(a)(3)(ix). Accordingly, he insists the court applied the incorrect sentencing guidelines, and he is entitled to a resentencing hearing.

In addressing this issue, the trial court first explained that two different sentencing enhancements were applicable to Soto's conviction at Count 2. **See** Trial Court Opinion, 7/10/2018, at 56-57. In addition to the "indecent contact" enhancement detailed above, Section 303.10(e) also provides for a sentencing enhancement based upon the number of images the defendant possessed. **See** 204 Pa.Code 303.10(e)(1). Specifically, if the "offender possessed more than 50 images," Section 303.9(e)(1) requires the court to "consider the sentencing recommendations described in § 303.9(l)(1)." *Id.*

The subsection further details that "[e]ach video, video-clip, movie, or similar visual depiction shall be considered to have 50 images." *Id.* at (e)(1)(ii). Under Section 303.9(l)(1), if the defendant possessed "more than 200 images up to 500 images, 12 months are added" to both the lower limit and upper limit of the standard range.[25]   204 Pa.Code § 303.9(l)(1).   Subsection 303.9(l)(3) provides that when more than one aggravating circumstance applies, "[t]he court shall consider the enhancement with the higher sentencing recommendation." *Id.* at § 303.9(l)(3).

Here, the court determined that both the images enhancement and conduct enhancement applied to Count 2.   *See* Trial Court Opinion, 7/10/2018, at 58.  The court opined:

> Based upon the factual background presented in the case at bar, … both aggravating circumstances were present in this matter.  Accordingly, [Soto] would be subject to the higher of the two enhancements, as provided by Section 303.9(l)(3).  Pursuant to enhancement enumerated by Section 303.9(l)(1), [Soto], who possessed between 200 and 500 images on such videos, would be subjected to the addition of 12 months to both the lower and upper limits of the standard range.  Accordingly, [Soto] would be subject to a standard guideline range of 24-36 months.  Pursuant to the enhancement enumerated by Section 303.9(l)(2), [Soto], who possessed images depicting penetration or attempted penetration of a child would be, alternatively, subject to an enhanced Offense Gravity Score of 10, rather than the base calculation of 9.  In that scenario, [Soto] would be subject to a standard sentencing guideline range of 22-36 months.  Pursuant

---

[25] The trial court determined Soto possessed 300 images, *i.e.*, six videos, which are each deemed to contain 50 images per Subsection 303.10(e). *See* Trial Court Opinion, 7/10/2018, at 57; 204 Pa.Code § 303.10(e)(1)(ii).  Soto does not dispute this calculation.

to Section 303.9(l)(3), since both aggravating circumstances were present in the instant matter, the correct guidelines calculation in this matter for Count Two yielded a standard range of 24-36 months.

Extensive discussion was held at the time of sentencing relative to the appropriateness of the sentencing guidelines as to Count Two. (N.T. Sent., pgs. 5-11). In this matter, the attorney for the Commonwealth provided the court with a guidelines calculation worksheet, which, for Count Two, utilized an Offense Gravity Score of 10 and demonstrated a standard range of 22-36 months. (Sentencing Guidelines Worksheet). When counsel for [Soto] offered an objection to said guideline calculation, the Court indicated, based on the above authority, that any error in the guidelines calculation inured to the benefit of [Soto]. Although this court firmly believes that, pursuant to Section 303.9(l)(3), that the correct standard guideline range in this matter should be 24-36 months, the court proceeded with sentencing using the guidelines as presented by the Commonwealth. (N.T. Sent., p. 11). Any error by the Commonwealth did not result in any prejudice to [Soto]. Rather, [Soto] benefited from the court's reliance on the guidelines submitted by the Commonwealth.

Further, it must be recognized that the court sentenced [Soto] on this count to a sentence of not less than one and one-half years nor more than five years, to be served consecutively to the sentence imposed on Count One. As such, regardless of the manner which the sentencing guidelines were calculated, this court imposed a mitigated sentence upon [Soto] with respect to the challenged Count Two. Even had this court not relied upon either applicable Sexual Abuse of Children Enhancement, in contradiction to the controlling statutory authority, the sentence imposed by the court as to this Count would have fallen in the middle of the standard range. Accordingly, [Soto] suffered no prejudice as a result of this court's action. As such, his claim in this regard must fail.

*Id.* at 58-59.

We remind Soto that "[s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." ***Commonwealth v. Conte***,

198 A.3d 1169, 1176 (Pa. Super. 2018), *appeal denied*, 206 A.3d 1029 (Pa. 2019). Here, it is evident the court was aware of all the relevant circumstances pertinent to the calculation of an appropriate sentence for Soto, and imposed a sentence in the mitigated range of the guidelines. Soto does not challenge the court's determination that it could have applied the enhancement at Subsection 303.9(l)(1) based upon the number of images he possessed, which would have yielded a higher standard guidelines range.[26] Accordingly, we need not determine whether the court's imposition of the conduct enhancement was appropriate, because any error inured to Soto's benefit.

Judgment of sentence affirmed.

Judge Nichols files a concurring memorandum.

Judge Pellegrini files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/16/2019

---

[26] We note that there is no requirement that a defendant must be informed of the applicable sentencing enhancement prior to the sentencing hearing. ***See Commonwealth v. Wilson***, 829 A.2d 1194, 1199 (Pa. Super. 2003).