J-S31026-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TROY M. WOODARD | : | |
| | : | |
| Appellant | : | No. 2760 EDA 2023 |

Appeal from the Judgment of Sentence Entered April 13, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001175-2021

BEFORE: BOWES, J., McLAUGHLIN, J., and BECK, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED DECEMBER 18, 2024**

Troy M. Woodard appeals from the judgment of sentence entered following his convictions for persons not to possess firearms, firearms not to be carried without a license, carrying firearms on public streets or public property in Philadelphia, driving unregistered vehicle prohibited, drivers required to be licensed, and general lighting requirements.[1] Woodard maintains that the court erred in applying the doctrine of inevitable discovery to deny suppression. We affirm.

Woodard's convictions stem from a traffic stop that resulted in the recovery of a firearm. Woodard filed a motion to suppress and argued that police lacked reasonable suspicion or probable cause, no valid consent to search was given, and the search violated his rights under the Fourth

---

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), 6108, and 75 Pa.C.S.A. §§ 1301(a), 1501(a), and 4303(a), respectively.

Amendment of the United States Constitution and Article I, Sections 8 and 9 of the Pennsylvania Constitution. **See** Motion to Suppress Physical Evidence, filed 9/20/21, at ¶ 3. He also cited **Commonwealth v. Alexander**, 243 A.3d 177 (Pa. 2020), where our Supreme Court held that a warrantless vehicle search requires probable cause and exigent circumstances.

The trial court held a hearing on the motion on November 30, 2021, where counsel reiterated his grounds for the motion.

> We're bringing this motion pursuant to Article One Section Eight of the Pennsylvania Constitution, the 4th and the 14th amendment of the U.S. Constitution. To wit, we're seeking to suppress a recovered firearm, a FN 509, 9mm handgun recovered pursuant to a search in this case.
>
> We're alleging that there was no reasonable suspicion or probable cause to perform a frisk of either Mr. Woodard's person or the vehicle involved. There have [sic] was no probable cause to search or arrest Mr. Woodard. And, finally, that the search involved in this case was a violation of the Supreme Court's reasoning in **Commonwealth v. Alexander**. More specifically, that officers did not procure a warrant prior to searching the vehicle and no valid exception as articulated in Alexander existed at the time of the search.

N.T., Motion Volume 1, 11/30/21, at 5-6. The Commonwealth presented testimony from Philadelphia Police Officers Zachary Zgleszewski and Zachary Stout. During both officers' testimony, the Commonwealth incorporated their body worn camera ("BWC") footage.

Officer Zgleszewski testified that on January 18, 2021, at around 7:38 p.m., he was on duty with his partner Officer Stout. **Id.** at 8, 9. While traveling around the 1400 block of St. Luke Street, he observed a green GMC Envoy

traveling east on St. Luke Street. *Id.* at 9. The vehicle's headlight and brake light were not working. *Id.* The vehicle also had a temporary license plate that appeared fraudulent to the officers. *Id.* The officers stopped the vehicle for the potential vehicle violations and Officer Zgleszewski approached Woodard who was seated in the driver's seat. *Id.* at 9, 12. Officer Zgleszewski asked Woodard for his license and registration. *Id.* at 12, 14. Woodard handed Officer Zgleszewski a "pink slip" for the vehicle and told Officer Zgleszewski that he left his identification card ("ID") at home. *Id.* at 14. While speaking with Officer Zgleszewski, Woodard leaned towards the passenger's seat. *Id.* at 16. As Woodard reached towards the passenger seat, Officer Stout informed Officer Zgleszewski that "there appeared to be something heavy" in Woodard's jacket pocket. *Id.* at 16, 37.

Officer Zgleszewski then asked Woodard to exit the vehicle to conduct a pat down. *Id.* at 18. Officer Zgleszewski testified that because it appeared that Woodard had a "heavy object" in his jacket, he "just wanted to make sure it wasn't a firearm or a weapon." *Id.* at 18-19. Following the pat down, Officer Zgleszewski recovered Woodard's wallet from his back pocket and had Woodard sit in the back of his police car "for officer safety" because he had a "slight concern" that Woodard was armed and dangerous. *Id.* at 18, 19, 27-28. Officer Zgleszewski then conducted an NCIC check that revealed that Woodard did not have a driver's license. *Id.* at 20, 21.

Officer Stout testified that, before he activated his BWC, he noticed Woodard lean to the right side of his vehicle as they pulled him over. *Id.* at

- 3 -

33. Once his BWC was activated, he approached the passenger side while Woodard searched for his documents. During this time, he noticed that Woodard "had something heavy" in one of his jacket pockets. *Id.* at 37. Officer Stout testified that after Woodard was removed from the vehicle, he conducted "a frisk of the immediate area and anywhere [Woodard] could reach" including searching for weapons. *Id.* Beginning on the driver's side, he used a flashlight to inspect the door pocket, floorboard, under the seat, and in the arm console. *See* 1400_ST_LUKES_ST_C_S-VUFA_WITH_ARREST-4, at 5:16-5:52. While remaining on the driver's side, he then reached towards the back seat. *Id.* at 5:53-6:01.

Officer Stout moved bags in the back seat around to see the floor. *Id.* Officer Stout then picked up a Gucci bag, from the back seat, unzipped the bag, and searched it with his hand and flashlight. *Id.* at 6:03-6:56. He also searched a bookbag and another bag on the back seat floor. *Id.* at 7:03-7:34. Next, Officer Stout went to the front passenger side, where he checked under the seat cushion and recovered a firearm. *Id.* at 7:53-8:44.

Officer Stout testified "[a]s I looked under the seat, that is when I saw the seat cushion itself was slightly propped up, and then I lifted it with my hand and saw the firearm inside." N.T., Mot. Vol. 1, at 39. Using his flashlight, he saw that the firearm "was slid in between the seat cushion and frame[,]" and hidden from plain view. *See id.* at 47, 48. Officer Stout noted that he looked under the seat because "it's a known location for concealing a firearm." *Id.* at 39.

Before recovering the gun, Officer Stout returned to the police vehicle and handed his handcuffs to Officer Zgleszewski who then handcuffed Woodard. *See* 1400_ST_LUKES_ST_C_S-VUFA_WITH_ARREST-4, at 8:07- 8:31. Office Stout testified that after the search, he arranged to have Woodard's vehicle "live stop" towed because it was unregistered, and he did not have a license. N.T., Mot. Vol. 1, at 24, 44, 48-49. Officer Zgleszewski testified that when a vehicle is not registered, the live stop program permits the vehicle to be towed. *Id.* at 21. He further explained that during a live stop, "an inventory officer" will search the vehicle before it is towed "for inventory reasons to make sure what's in the vehicle, are they any valuables, anything potentially dangerous." *Id.* at 22. The Commonwealth did not present testimony that an inventory search was conducted of Woodard's vehicle.

Counsel argued that the search was prohibited pursuant to *Alexander*, since the search was conducted without a warrant. He noted that "[t]his is not a wingspan search" and that the firearm was "not in plain view, certainly not in his immediate accessible wingspan area[.]." *Id.* at 50, 51. He further argued that the search was not a valid inventory search "because the tow truck is not called until after [the police] search the vehicle." *Id.* at 51. In response, the Commonwealth claimed that the frisk of the vehicle was lawful under *Alexander* and that the inevitable discovery doctrine applied. The court denied the motion to suppress, agreeing that though a warrantless search was conducted, the inevitable discovery doctrine applied. *Id.* at 65. The court also

J-S31026-24

noted that it relied on **Commonwealth v. Gonzalez**, 979 A.2d 879 (Pa.Super. 2009). *Id.* at 66. The court made the following findings of fact:

> For lack of any other determination, I do think the police officers were credible in their testimony. Credible, I mean, to some extent to their own default, but I think they were very honest. I think what they both [sic] that to which they both testified did occur on the body cam.

> They pulled the car over, they requested the information. Officer Zgleszewski told the defendant the basis for the stop was a brake and headlight malfunction. I did hear a conversation between them on that and he requested his information. I found it interesting they gave him an ample amount of time to prove his documentation and gave him ample leeway to search throughout his own vehicle for this documentation. To me, the officers were very patient in affording Mr. Woodard time to locate the requested information. It's interesting that he was unable to produce his license that was apparently in his wallet. But it's possible that it's easy to forget where things are when you don't expect to be pulled over. Who knows. But when he was unable to produce the required information, Officer Zgleszewski asked him for his name and date of birth to run that information.

> He was removed from the vehicle based upon looking at the second body-worn camera what Officer Stout believed he may have seen. And Officer Zgleszewski ran him through NCIC. At this point, both officers admitted there was no communication between them. Officer Stout did a search of the vehicle. That search was more than just a general frisk as he went inside bags more than just a general frisk, but he went inside actual bags of the vehicle. In the meantime, Officer Zgleszewski ran the NCIC check and there was an invalid drivers license.

> . . . . And there was no evidence as well as to the proper registration for the vehicle itself, so this is, of course, a live stop. If there was evidence that the car was valid and registered, . . . but the car had to be towed. This was going to be a live stop even though I find that the search of the vehicle was warrantless at the time it occurred because

- 6 -

> there was no communication between the officers and it was performed prior to the arrest of Mr. Woodard. I do find the case law on inevitable discovery applicable in this matter, so the motion to suppress is denied.

*Id.* at 63-65. The court also noted that Section 6309.2 governed the live stop of unregistered vehicles. *Id.* at 60; *see also* 75 Pa.C.S.A. § 6309.2 ("**Immobilization, towing and storage of vehicle for driving without operating privileges or registration**").

Woodard filed a motion to reconsider the denial of his motion. Counsel noted "Appendix 'A' of Directive 12.8-2 Section 3(B)," related to Philadelphia's Live Stop Program. *See* Motion to Reconsider Denial of Defendant's Motion to Suppress, filed 11/30/21, at ¶ 10. He noted that the officers did not follow the live stop procedure provided such as conducting an inventory search on Woodard's vehicle before being towed. *Id.* at ¶ 11. The court held a hearing on the motion where counsel argued that the vehicle was not live stopped at the time of the search, and that it was speculative to suggest the firearm would have been recovered during an inventory search. *See* N.T., Motion Volume 2, 12/01/21, at 5-9. The trial court denied the motion stating "[b]ased upon the live stop program, I found this would have been inevitable discovery." *Id.* at 24.

Woodard proceeded with a non-jury stipulated trial. The court found him guilty of the above referenced offenses and sentenced him to four to eight years' incarceration. This timely appeal followed.[2]

Woodard raises the following issue:

> Whether the Trial Court erred in denying suppression of a firearm, holding that although police unlawfully seized a firearm from [Woodard's] car in the absence of probable cause and exigent circumstances and without a search warrant, that the exclusionary rule did not apply because of the inevitable discovery rule as held by the United States Supreme Court in *Nix v. Williams*, 467 U.S. 431 (1984) and by this Court in *Commonwealth v. Gonzalez*, 979 A.2d 879 (Pa. Super. 2009)?

Woodard's Br. at 9 (answer of trial court omitted).

Woodard claims that officers recovered his gun following a search "that exceeded the permissible scope of an inventory search." *Id.* at 19. Woodard maintains that a court must consider the scope of an inventory search; if there were valuable items in plain view; the reason, nature, and length of the custody; and "any other facts which the court deems important in its determination." *Id.* Woodard notes that an inventory search must also be reasonable. Turning to the facts of his case, he claims that Officer Stout conducted a "very invasive search," noting Officer Stout's testimony that he had to physically pull the seat cushion up and shine his flashlight to see the firearm. *Id.* at 21-22 (citing N.T., Mot. Vol. 1, at 47-48). He maintains that

---

[2] The trial court reinstated Woodard's post-sentence and appellate rights *nunc pro tunc* on September 25, 2023. *See* Order Granting Post Conviction Relief Act Petition, filed 9/25/23.

the firearm would not have been "inevitably discovered by way of an inventory search . . . because the prospective inventory search would have been overly intrusive and beyond the scope of the care taking function of an inventory search[.]" *Id.* at 17.

For its part, the Commonwealth maintains that Woodard waived any argument regarding the scope of the search. We agree.

Our standard of review for a claim challenging the denial of a suppression motion is well settled.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. . . . Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Bumbarger*, 231 A.3d 10, 15 (Pa.Super. 2020) (citation omitted). "[O]ur scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing." *Id.*

In his motion and at the suppression hearing, Woodard claimed the officers conducted a warrantless search of his vehicle in violation of *Alexander*. Additionally, he argued that the search was not a valid inventory search because the officers did not arrange to live stop his vehicle until after completing their search. *See* N.T., Mot. Vol. 1, at 51. While he addressed the

wingspan of the search, Woodard did not challenge the scope of the search, nor did he claim that the search was "overly intrusive." **See** Woodard's Br. at 17. The claim is waived, and we therefore affirm the trial court's denial of Woodard's motion to suppress. **See Commonwealth v. Green**, 204 A.3d 469, 483 (Pa.Super. 2019) (concluding waiver of claim that court erred in denying suppression motion where appellant failed to raise issue before the trial court); Pa.R.Crim.P. 581(D) (stating that a motion to suppress must "state specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof"); Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").

Order affirmed.

Judge Beck joins the memorandum.

Judge Bowes concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  12/18/2024